JOHN R. WILLIAMS & another *vs.* CITY OF TAUNTON.
EDWIN WILLIAMS *vs.* SAME.
ALEXANDER H. WILLIAMS *vs.* SAME.

Bristol.   Jan. 28. — July 29, 1878.   ENDICOTT & SOULE, JJ., absent.

On a petition for damages for land taken by a city in constructing waterworks, the petitioner was asked, on cross-examination, against his objection, " What became of the loam on the land ? "   He answered that he took some with the consent of the water commissioners.   *Held,* that the question and answer were immaterial, and that the petitioner had no ground of exception.

At the trial together of several petitions for damages, for the taking of separate parcels of land by a city in constructing waterworks, declarations of one of the petitioners, made before the taking, tending to show that the lands in the neighborhood would be benefited by the waterworks, were admitted against the petitioners' objection.   *Held,* that, although the petitioner making the declarations was at the time a member of the city government, the evidence was admissible against him ; and that, as it did not appear that the other petitioners asked to have the declarations restricted to the case of the petitioner making them, no ground of exception appeared.

An expert, who has testified that the point of drainage of surrounding lands by a filter basin, on land taken for that purpose, may be determined, may be asked if the level has been determined by experiment, at which water stands under soil generally, and may state the results of experiments made by him in his laboratory in proving that fact.

On the question of damages for land taken by a city for a public use, evidence of the distance from the land to certain public places in the city is admissible for the purpose of showing its relation to the thickly settled portions of the city.

At the trial of a petition for a jury to assess the damages for the taking of land by the city of Taunton under the St. of 1875, c. 217, providing in § 2 that " any person injured in his property " may have his damages assessed " in the same manner as is provided where land is taken for highways," the presiding judge instructed the jury that the petitioner would not be entitled to the whole market value of his land, if they found that, " on the whole, the advantages exceed the injury, if any there is to the remaining lands," which were parcel of the land taken.   *Held,* that the petitioner had no ground of exception.

THREE PETITIONS, under the St. of 1875, c. 217, to the Superior Court, for a jury to assess the damages occasioned by the taking of the petitioners' lands, situated in Taunton, by the respondent, in supplying the city with pure water.

The cases were tried together, before *Brigham,* C. J., who allowed a bill of exceptions in substance as follows :

It was admitted that the several petitioners were the owners of the lands, as set out in their several petitions ; that the peti-

tioners had applied to the county commissioners for the county of Bristol for the assessment of their several damages; and that, after such assessments had been duly made by the commissioners, these petitions were filed.

The record of the taking of the lands by the city set forth that the lands were taken "for the purpose contemplated in said act, viz.: for the purposes of constructing filter beds, basins, reservoirs and wells therein, erecting thereon boiler and engine-houses, and other buildings and structures necessary or convenient for the waterworks, laying conduits and pipes, constructing necessary roads and approaches, and generally for doing in and upon said lands all things necessary or proper to be done for the purpose of establishing and maintaining its system of waterworks."

Alexander H. Williams and Edwin Williams, two of the petitioners, were each asked, on cross-examination by the respondent, against the objection and exception of the petitioners, "What became of the loam on that portion of your land taken by the city?" They each replied that the city had most of it, and that they took some with the assent of the water commissioners.

Several witnesses testified to conversations with Alexander H. Williams, which were admitted against the petitioners' objection, to the effect that, when experiments were being made to determine the location of the waterworks, Williams said they had better be on the Taunton side of the river; that he would be liberal with the city; that he was desirous of having the works on his and his brothers' land; that the price could be easily fixed; and that the expense of land would not be half as great as on the other side of the river. One witness testified that Williams said "they would let the city have it at their own price," and that it would be a great benefit to Ward 5 and to property holders. It appeared that the lands taken were in Ward 5, and that, at the times of the above conversations, Williams was a member of the common council of the city from this ward.

The petitioners contended that their lands were injured from drainage by the filter basin of the respondent's waterworks. On this point, William R. Nichols, a chemist, was called as a witness

by the respondent. It was admitted that he was an expert. He testified, among other things, that the point of drainage of the remaining lands, by the filter basin on the land taken, could be determined by experiments on the lands; and the witness testified at length as to the manner of doing this, by driving tubular wells at various distances from the filter basin, and noting the effect upon those wells as the water was drawn down in the filter basin. The witness was then asked, " Has the level at which water stands under the soil been determined by experiment ?" This question was objected to, except as to those experiments made on the lands of the petitioners; but the judge permitted the witness to testify, subject to the petitioners' exception, at length, as to the experiments made by him, in connection with diagrams used by him in classes connected with the Institute of Technology at Boston, which were exhibited to the jury. It appeared that these experiments were made, in the laboratory of the witness in Boston, in small boxes; that he had put sand and gravel into these boxes, in its natural state, so far as he could, and allowed the earth to settle. The amount of earth used was about six feet in length, about six inches deep and four inches in width, and the Cochituate water was allowed to flow into this earth from a tube.

A view was taken of the premises before the trial, and in the opening remarks made to the jury, before the view, by the respondent's counsel, it was contended that the benefits arising to the several petitioners, by the laying out and opening of public streets over the land taken, since the land was taken, and the prospective benefits from a bridge to be constructed over Taunton River, by which the distances to the station of the Old Colony Railroad, Taunton Green and other important points were diminished, were to be considered. The petitioners contended that all such benefits, if any there were, could not be considered by the jury. This opening statement was objected to, but no exception was taken to it.

Alfred H. Martine, a civil engineer, called by the respondent, was allowed, against the petitioners' objection, for the purpose of showing the relation of the petitioners' land to the thickly settled parts of Taunton, and public places of resort therein, to state the distance to the Old Colony Depot, from the corner of

the land taken at Williams Street, oy the highway, across a certain bridge, and also other distances along the route, to Taunton Green, the Unitarian Church, &c. It appeared that the route of which he gave measurements was the only route by the highway to the Old Colony Depot. The witness was also asked, " What is the distance from the same point to the Old Colony Depot in an air line ? " To this the plaintiffs objected, but the judge admitted the evidence for the purposes to which the other measurements applied. The witness gave an estimate of this distance.

The judge rejected evidence offered by the respondent to show that, by a street laid out over the land taken, and since the taking, and by a contemplated bridge over Taunton River, under the St. of 1877, *c.* 72, the lands of the petitioners would be brought a mile nearer the station of the Old Colony Railroad than they were at the time of the taking.

The petitioners asked the judge to give certain instructions to the jury, which it is unnecessary now to state. The judge declined to give the instructions requested, in the form in which they were presented; but instructed the jury as follows :

" The petitioners are entitled to recover compensation for all damages to their several tracts of land, occasioned by taking parts of these tracts for the uses and in the manner in which they were taken by the location. Such damages will include the value of the land taken from each tract, the diminished value of the residues of the tracts occasioned by the taking, by reason of any injury to those residues inseparable from any of the uses to which the city of Taunton may lawfully put the land taken. The value of the land taken may be determined, not necessarily by its value for the uses to which it was put before or at the time of taking, but by its value for any uses to which it was, at the time of taking, adapted and available. The diminished value of the residue of the tracts, occasioned by the taking, may be determined by considering the effect of the taking in dividing the petitioners' lands, so that access from one part to another, which before the taking had been direct and convenient, became by the taking indirect and inconvenient, in depriving petitioners of access to the river for any valuable use to which the river could be applied in connectior with their several tracts

of lands; in exhausting or withdrawing from the soil of such residues of land natural supplies of water, needful to the same, in any of the uses to which they were adapted and available and also the effect of the taking, in view of its character, purposes and influence, in any benefits or advantages the residue of land derived from the taking, by which such residue became adapted and available to new and valuable uses, or received an enhanced value for the uses to which they were applied before the taking; but all such advantages and benefits are to be those which the several petitioners in some specific or peculiar form receive from the taking, and not those benefits or advantages which the petitioners receive in common with other persons owning land in the vicinity, the practical question being this : What sums of money will compensate the several petitioners for all the consequences of the taking parts of their several tracts of land, for the use and in the manner in which they were taken, in view of the loss of what has been taken and the effects more or less injurious, and more or less beneficial, of the taking upon what remains to the petitioners of their several tracts ?

"The city of Taunton took the land of petitioners on July 7, 1876, and to that the inquiry as to damages applies; and, inasmuch as the act of taking reserved to the petitioners no right to use any part of the land taken for any purpose, the effect of the taking, with reference to damages, is to be considered as if, by the taking, the petitioners were absolutely excluded from any use of the land taken, for passing from their land not taken to and from the river, or to and from one part and another of the land not taken. In considering the area of the land of the several petitioners taken by the city of Taunton, the jury will treat the boundary of the land taken on the river as the lowest line to which the tide ebbs from natural causes. The petitioners are entitled to receive interest on their damages from July 7, 1876.

"Any evidence of declarations of Alexander H. Williams as to his desire that the land taken for the purposes of waterworks should be from his farm, or in Taunton, or in Ward 5, ought to be considered with such reasonable explanations as are afforded by his official relation to the city of Taunton, in determining whether he at the time of making such declarations, in view of

what he knew of the probable and expected scope of the taking and the future use of the land taken, considered the location on his land more or less beneficial to the residue of his land, and whether his present claim is inconsistent with his claim and testimony in this trial."

The judge further instructed the jury " that the petitioners would not be entitled to the whole market value of their lands, if the jury find that on the whole the advantages exceed the injury, if any there is, to the remaining lands."

The jury returned a verdict for each petitioner for less than the respective claim of each; and the petitioners alleged exceptions.

*G. Marston & C. A. Reed*, for the petitioners.

*T. M. Stetson & S. M. Thomas*, for the respondent.

LORD, J. 1. Two of the petitioners were asked, in cross-examination, what became of the loam taken from their respective lands. The question was clearly immaterial, and therefore not subject to exception. The answer to it was, in law, immaterial; if, in fact, it was liable to be understood by the jury as derogating from the damages sustained by the petitioners, they should have objected to the answer, or, at least, have requested a ruling upon its effect; but they did neither; and the presiding judge, in his general ruling upon the petitioners' claim, excluded the idea that the value of the loam thus received by the petitioner was to be deducted from or taken into consideration by the jury upon the amount of his damages.

2. One of the witnesses, who was also a party, was, when the work was done, a member of the common council for Ward 5 of the city of Taunton, and his land was within the limits of Ward 5. Evidence was offered of his declarations in reference to the locality of the works, and this was objected to. At the argument, it was contended that the evidence, if admissible at all, should have been restricted to his case, and should not have been allowed to have any influence over the cases of the other petitioners; and that the evidence was not admissible at all, on the ground that he was then a public officer and that his declarations were to be presumed to be made in the public interest and not with reference to his private interest. The first objection is not open on this bill of exceptions. If his declarations were

admissible against him, and the other petitioners did not wish to be prejudiced by them, they should have asked for instructions restricting them to the case of the witness. The bill of exceptions does not show that this was done, or that proper instructions were not given. As to the other objection, if the public interest and the private interest of the witness were identical, there would seem to be no objection to the evidence. If, however, the several interests were in conflict, and he took part in the consideration of the subject, we see no reason why what he said and what he did, having a bearing upon the issue, should not be submitted to a jury. The standard of official virtue is not so high, that the court can say, as matter of law, that, when a public officer takes part in a matter in which he has also a private interest, such action is necessarily for the exclusive advantage of the public welfare and in·derogation of his private advantage. We think the party can take no just exception to the language of the presiding judge upon that subject.

3. A witness, agreed to be competent as an expert upon the subject, testified that, by experiments upon the land, the drainage of the remaining lands by the filter basin on the land taken could be determined. He was then asked, "Has the level at which water stands under the soil been determined by experiment?" This question was objected to, unless the experiments were made upon the lands of the petitioners. The objection was rightly overruled. The right of a person, called as a witness, to give an opinion as an expert, or to testify to any conclusion to which his skill leads him, to state his reasons and the mode by which he arrives at his conclusions, has been many times considered by this court. It was thus held in a capital trial, against the objection of the prisoner's counsel; *Commonwealth* v. *Webster*, 5 Cush. 295, 301; and has since been repeatedly so decided in civil cases, and exhaustive reasons therefor given by Shaw, C. J., in *Dickenson* v. *Fitchburg*, 13 Gray, 546, 555, 556. The testimony of the expert is commented on as if the witness had testified to the height at which water actually stood in land at Taunton, and that height determined by means of experiments in small boxes in Boston. No such evidence was admitted or offered. The witness was asked a question of science or skill: "Has the level at which water stands under the soil been deter-

mined by experiment?" Not at Taunton, nor at Boston, nor at any other place, but generally; and, having answered the question affirmatively, he then proceeds to state how, in the classes connected with the Institute of Technology in Boston, he was accustomed to demonstrate, explain and illustrate the mode of proving the fact by means of diagrams, boxes, sand, gravel, &c., in his laboratory.

4. The only remaining objection to the admission of evidence was that which related to the distance from the petitioners' land to certain public places, such as the Old Colony Depot, Taunton Green and Unitarian Church. The testimony offered was that of a civil engineer who had measured the several distances. The presiding judge admitted the evidence "for the purpose of showing the relation of the petitioners' land to the thickly settled parts of Taunton and public places of resort therein." These may be, so obviously, elements of value of the land taken, that this court cannot say that the evidence is incompetent.

5. A long series of prayers for instructions was presented by the petitioners' counsel to the presiding judge. These instructions were given substantially, except in so far as they were in conflict with this ruling, to which exception was taken, " that the petitioners would not be entitled to the whole market value of their lands, if the jury find that on the whole the advantages exceed the injury, if any there is, to the remaining lands." We understand this instruction to have been given not for the purpose of fixing a rule by which the jury were to assess the damages, but for the purpose of meeting a special proposition of the petitioners, substantially this : that the respondents were to pay for the full value of the land actually taken at all events, wholly irrespective and independent of the question of benefit or injury to the land not taken ; and that, even if the land not taken was made better and more valuable by the taking, such benefits could not be taken into account by the jury, but the whole value of the land must be assessed; while, if the injury to the remaining lands was greater than the benefits, the excess of such injury over the benefits was to be assessed in addition to the value of the land taken. If the remaining lands, claimed to have been injured or benefited, were different lands from that which was

taken, there might be difficulty in thus laying down the rule; but the remaining lands were parcel of the land taken, and, in this view, we think the instruction was correct.

It is to be observed that the only standing which the petitioners have in court is derived from the provisions of the act itself. The second section of the act has this provision : " Any person injured in his property under this act, and failing to agree with said city as to the amount of damages, may have the same assessed and determined in the same manner as is provided where land is taken for highways." It will be seen, from this provision, that it is unnecessary to determine whether the estate taken is called an easement, a base fee determinable upon a future contingency, or a fee simple. For all practical purposes, the condemnation of the property is a perpetual one, and was so treated by the presiding judge, and the jury so considered it under his instructions. What may be the technical name by which such right shall be called is immaterial. The statute does not provide that the petitioners shall recover the value or the price of the land taken, nor does it make any reference to the comparative amount of benefit or injury. It uses only the broadest and most equitable language. " Any person injured in his property" may have his damages "assessed and determined in the same manner as is provided where land is taken for highways." When, therefore, a person is the owner of a tract of land, and a portion of that land is taken and the remaining portion is claimed to be injured, the entire tract, of which the land taken and the land remaining are severally parcels, is the property injured, and it is the extent of that injury which is to be determined. It is therefore a question simply of indemnity. What sum of money is an indemnity against the injury ? Taking nothing but the language in which his right to damages is given, the actual injury to his property must be determined by ascertaining what sum of money will make his property as valuable as it was before it was interfered with.

But we do not deem it necessary to place the decision wholly upon that ground. We think that the language of the act, " in the same manner as is provided where land is taken for highways," is not confined simply to the petition for a jury, or to an assessment of damages by a jury; but that "in the same man-

ner" means under the same rules and principles of law so far as applicable to the subject matter. Various criticisms have been made upon the language of the rulings, which we deem wholly unfounded. It is said in argument that the language of the presiding judge, " if the advantages exceed the injury," is in conflict with the rule as declared in *Upton* v. *South Reading Branch Railroad,* 8 Cush. 600. This is not so. The presiding judge in this case gave the legal meaning to the word " advantages," and gave it correctly. In *Upton* v. *South Reading Branch Railroad,* the word " advantages " was not limited to its legal meaning, but embraced the general rise of property common to all estates in the vicinity.

It is not necessary to notice particularly other similar exceptions. It is sufficient to say that the cause was submitted to the jury under instructions adapted to the case and which are unobjectionable in law, and that the various rulings upon questions of evidence were sufficiently favorable to the petitioners.

*Exceptions overruled.*