COMMONWEALTH *vs.* HENRY M. LEACH & another.

Middlesex.    November 24, 1891. — February 27, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Abortion — Indictment — Joinder of Counts — Evidence — Declarations.*

Several different substantive offences may be included in different counts of the same indictment, when they are of the same general nature, and when the mode of trial and the nature of the punishment are the same.

Where the bodily or mental feelings of a party are to be proved, exclamations and expressions indicating present pain, as distinguished from mere narration, are admissible; but declarations and statements not made to a physician for the purpose of treatment are inadmissible.

Where, in an indictment for attempting to procure a miscarriage, the defendants were allowed to show that the relations between the woman and her sisters were not friendly, and to testify to anything that she said to her sisters, it was *held*, that testimony that she had refused to see them on one occasion many months before, with nothing to show the reasons therefor or the circumstances, was rightly excluded.

In order to convict on circumstantial evidence in a criminal case it is not necessary to show that it was not in the power of any other person than the defendant to commit the crime. It is enough if it is proved beyond a reasonable doubt that the defendant committed it.

Where witnesses who are qualified as experts have been called in a criminal case by the government, and have been allowed to testify in chief that, in their opinion, it is impossible for anybody to do a particular thing, and where this opinion is upon a matter material to the issue on trial, their testimony may be met by calling witnesses in defence to testify that, to their own knowledge, as matter of fact, the thing has been done, and that they have done it themselves. KNOWLTON, J., dissenting.

INDICTMENT, in three counts, returned into the Superior Court at the June term, 1891, alleging that the defendants attempted to procure the miscarriage of Mary A. Murphy, on April 25, 1891, in consequence whereof she died on the following day.

In the Superior Court, before the jury were empanelled, the defendant Henry M. Leach moved to quash the indictment, on the ground that it charged in the first count that the defendants committed the offence therein described, and also charged the same act to have been committed by some persons to the jurors unknown ; that in the second count it charged that the defendants incited, etc. some person to the jurors unknown to commit the offence, and also charged that a certain person to the jurors unknown committed the acts described in said count; and that in the third count it charged a distinct felony from that charged in the other counts, in that it charged the defendants as accessories after the fact. *Blodgett*, J. overruled the motion; and the defendants excepted.

At the trial the government offered evidence to prove that the death was caused by peritonitis induced by the rupture of the uterus by some instrument, and produced a sea-tangle tent, and offered evidence tending to show that the tent was found in the pelvic cavity of the deceased, and that it had reached that cavity by having passed through the *os uteri* and through the posterior wall of the uterus, and that the tent was applied to produce abortion ; and further offered the testimony of physicians to show that it was impossible for the deceased to have inserted the tent herself, and that it would be impossible for a woman unaided to insert a tent into her own uterus. The defendants offered the testimony of one Mary Elizabeth Hadley, to show that she could use and had used sea-tangle tents upon herself for a legitimate purpose. The evidence was excluded.

The defendants offered evidence of the declarations of the deceased, about five months prior to her death, as to her health and condition. The court excluded the evidence, but allowed testimony of anything said by the deceased indicating present pain, without assuming what her condition was at the time. The defendants offered the testimony of one Margaret Haywood, to show that the deceased had refused to see her sisters more than seven months before, when they called, with nothing to show the reason for or the circumstances of her refusal. The court excluded

.the evidence, allowing the defendants to offer testimony tending to show that even longer back than seven months before her death the relations between the deceased and her sisters were not friendly, and to prove anything that she said to her sisters.

The defendants asked for several instructions to the jury, one of which was: " 3. That in order to convict on circumstantial evidence you must be satisfied that the act could not have been done by any other person than the persons charged in the indictment, and on this point the government must satisfy you beyond a reasonable doubt." The court refused to give this instruction.

The jury returned a verdict of not guilty as to Sarah E. Leach, and of guilty as to Henry M. Leach, who alleged exceptions.

The case was argued at the bar in November, 1891, and afterwards was submitted on the briefs to all the judges.

*H. D. Hadlock*, for Henry M. Leach.

*G. C. Travis*, First Assistant Attorney General, (*A. E. Pillsbury*, Attorney General, with him,) for the Commonwealth.

ALLEN, J. 1. The motion to quash was rightly overruled. The three counts are in the usual and proper form, and they are properly joined; the offences described in them being similar in their nature, mode of trial, and punishment. *Commonwealth* v. *Jacobs*, 152 Mass. 276, 281.

2. The testimony as to the declarations of the deceased in regard to her health and condition was rightly excluded. The defendants were allowed to prove exclamations and expressions indicating present pain, as distinguished from mere narration, and the evidence which was excluded was nothing more than her declarations and statements, not made to a physician for the purpose of treatment. *Bacon* v. *Charlton*, 7 Cush. 581, 586. *Barber* v. *Merriam*, 11 Allen, 322, 324. *Roosa* v. *Boston Loan Co.* 132 Mass. 439.

3. The testimony that the deceased had refused to see her sisters on one occasion many months before, with nothing to show the reason or circumstances of her refusal, was also rightly excluded. The court allowed the defendants to put in evidence anything to show that the relations between her and her sisters were not friendly, and anything that she said to her sisters.

4. The defendants' third request for an instruction to the jury was rightly refused. In order to convict on circumstantial evidence, it is not necessary to show that it was not in the power

of any other person than the defendant to commit the crime. It is enough if it is proved beyond a reasonable doubt that the defendant committed it. So far as the other requests contained correct propositions of law, they were covered by the instructions given.

5. The exclusion of the testimony of the defendants' witness Hadley, in the opinion of a majority of the court, was erroneous. It was material at the trial for the government to show that the act which caused death was not done by the deceased herself, but was done by the defendants, or one of them. The theory of the government was that the death was caused by the introduction of a sea-tangle tent into the uterus, and the government offered evidence of physicians tending to prove that it was impossible for the deceased to have inserted the tent herself, and that it would be impossible for a woman unaided to insert a tent into her own uterus. This being a matter outside of the range of common knowledge, the government might properly call expert witnesses to testify to their opinion. No valid objection was open to such evidence, and no objection was made. Had the physicians testified merely that in their opinion the deceased could not have done this thing herself, such opinion might have rested on reasons applicable only to that particular woman ; but they went further, and made their testimony applicable to all women, or at least to women in general.

The question then arises, How may such testimony be met? When an expert witness testifies to a matter of opinion, it has often been declared that it is competent for him to give the reasons upon which his opinion is founded, and to state that it is the result of observations and experiments, in order to confirm his testimony. *Emerson* v. *Lowell Gas Light Co.* 6 Allen, 146. *Lincoln* v. *Taunton Copper Co.* 9 Allen, 181, 191, 192. *Williams* v. *Taunton*, 125 Mass. 34, 40. *Eidt* v. *Cutter*, 127 Mass. 522. *Sullivan* v. *Commonwealth*, 93 Penn. St. 284, 296. *Boyd* v. *State*, 14 Lea, (Tenn.) 161, 169–174. *Smith* v. *State*, 2 Ohio St. 511, 513. If other experts are called on the other side, and testify to a contrary opinion, the same rule would allow them to state that their opinion also was the result of observations and experiments. But where the testimony to be met is the opinion of expert witnesses that it is impossible in the nature of things for a particular thing to be done, it is not necessary to rely on expert opinions

to the contrary, if it can be shown as a matter of fact that the thing has been done. If, for example, expert witnesses were to testify that it would be impossible to propel a vessel by steam across the Atlantic Ocean, or to navigate the air with balloons or flying machines, or to propel cars by electricity, or to communicate with other persons at a long distance away by telegraph, or by spoken words, or to store up sounds in a machine or instrument so that long afterwards they could be reproduced, or to render one temporarily insensible to pain by anæsthetics, it would not be necessary in reply to call other experts to give opinions to the contrary. The direct facts might be testified to by any person who knew them. It was held in *Cottrill* v. *Myrick*, 3 Fairf. 222, that one familiar with fish might testify to his opinion as to the ability of fish to overcome particular obstructions in rivers. If such a witness were to testify that in his opinion salmon could not overleap certain dams or falls, can it be doubted that one who had seen them do it might be called in reply to testify to the fact? In *Reeve* v. *Dennett*, 145 Mass. 23, the plaintiff's evidence tended to show that a certain compound was worthless for the purpose of allaying pain in filling teeth; and it was held competent to meet this evidence by calling witnesses to testify that operations upon their own teeth, when this compound was used, were practically painless. In the trial of Palmer, evidence tending to show that strychnine could not be discovered in a body after death was met without objection by evidence that it had been done; and the experiments were stated.

The principal objections which are suggested to the testimony offered by the defendants in the present case are, that it would have introduced another issue than the one immediately on trial, and would have called upon the government to meet statements of facts which it could not have anticipated. The answer is, that the government itself presented the issue that no woman could have done this thing herself, and that the defendants, by the testimony which they offered in reply, introduced no new or collateral issue, but merely sought to meet the issue tendered by the government. Such testimony is relevant, because the government has made it so. It tends to negative the theory of the government on a material point. It is stated in Steph. Evid. (Am. ed.) 107, that where the opinion of an

expert is deemed to be relevant to the issue, facts inconsistent with such opinion become relevant also.

Without extending the decision beyond what is involved in the particular case before us, we are of opinion that where witnesses who are qualified as experts have been called by the government, and have been allowed to testify in chief that, in their opinion, it is impossible for anybody to do a particular thing, and where this opinion is upon a matter material to the issue on trial, their testimony may be met by calling witnesses in defence to testify that to their own knowledge, as matter of fact, the thing has been done, and that they have done it themselves.

For this reason only, it being unnecessary to consider the defendant's other objections, the entry must be,

*Exceptions sustained.*

KNOWLTON, J. Reluctantly, and with great deference for the opinions of my associates, I state my inability to agree with them in regard to the testimony of the witness Hadley.

The *post mortem* examination of the body of Mary A. Murphy showed that she came to her death by peritonitis, induced by the rupture of her uterus by some instrument; and there was evidence that a sea-tangle tent was found in her pelvic cavity, and that it reached that place by having passed through the *os uteri*, and through the posterior wall of the uterus.

The issue was whether the defendant Henry M. Leach inserted the tent for the purpose of procuring an abortion upon her, and involved in the issue was the question whether she inserted it herself. The Commonwealth introduced medical experts, who testified that in their opinion she could not have done it herself, and that it would be impossible for a woman to insert such a tent into her own uterus. So far as this testimony related to other women than the deceased, it was outside of the issue, but as an opinion in reference to women generally, while it was collateral, it had an important bearing on the issue. It was therefore competent for the defendant to contradict it, as it would have been equally competent for him, if no such testimony had been introduced, to prove affirmatively that women generally could insert a tent in the place where this was found, as bearing on the question whether the deceased woman performed the operation on herself. The matter under considera-

tion was a fact in surgical science. The testimony introduced by the Commonwealth was nothing more than the opinion of experts in regard to that fact. When they said they thought it impossible for a woman, unaided, to perform this operation on herself, they meant, and the jury must have understood them to mean, that no ordinary woman could do it; not that there might not be a woman with such malformation of her organs, or with such displacement of them by disease or other causes, and of such peculiar experience in the treatment of herself, that she could insert a tent into her uterus.

Now the question in this case is, What is the proper mode of proving that an ordinary woman can or cannot do this? If a patient can testify to her experience in her own case of disease, then clearly her physician, who was present and observed her, can testify, and he ordinarily would testify much more intelligently than she. But it is a rule universally followed, that the experience of a physician in a particular case is not competent to prove or disprove a theory in medical or surgical science. There are good reasons for this rule. In the first place, what is done or observed in a particular case, other than that on trial, is not in issue, and the opposite party cannot anticipate the introduction of it, and cannot be prepared to meet it. To admit such evidence would allow the jury to be influenced in establishing a general rule in medicine or surgery by a partisan account of what occurred in a particular case, with no opportunity for the opposite party to present a different version of the facts. Then, too, such a course would multiply issues, to the distraction of the jury, and to the unreasonable protraction of the trial. Each of half a dozen medical experts would tell the story of half a dozen cases in his experience tending, in his own view, to support his theory, and contradict that of witnesses called on the other side. There is seldom a trial involving much testimony from medical experts in which there is not some theory sworn to with great positiveness, which could be disproved, if it were allowable, by calling another physician to say, " I had a case [naming it] the facts of which [describing them] show conclusively that this theory is wrong." Yet such testimony is never received. If testimony of such facts cannot be given by a physician, much less can it by a patient. The true way of meeting a medical theory is by calling experts, and showing their quali-

fications, and taking their opinions. When they give the reasons for their opinions, the particular facts are received, not as independent evidence in themselves, but only as showing the value of the opinion; and it has been expressly held in a recent case, that even for that purpose specific facts will not be received if they would not be competent on other grounds, and if they would be likely directly to influence the jury. *Hunt* v. *Boston*, 152 Mass. 168. It cannot be said that the facts of a particular case are to be received to prove or disprove a medical or surgical theory merely because the facts seem simple, and seem, if believed, very plainly to establish or contradict the theory. Such a doctrine would open a wide door to the admission of this kind of evidence.

There are a great many cases in which the facts as stated by the witness would be exceedingly simple, and in which their application to the theory would be direct. Yet they would need close scrutiny, which, in a case that had never been heard of except from the witness, it would be impossible to give. In the present case the testimony offered seems direct. But the thing sought to be proved by the defendant was not a simple act which may be a matter of common observation and about which there is hardly a possibility of mistake. It was what occurred in a peculiar case, which, so far as appears, is the only one of the kind ever known, and which, viewed in reference to the question whether an ordinary woman can perform upon herself the operation which was performed on the deceased, was as obscure and as difficult to test and comprehend as the progress of disease in common cases, or the effect of other surgical operations on internal parts of the body which are shrouded in darkness. It was a subject about which most persons know little or nothing. It did not lie in the domain of common knowledge, but in the narrow field of surgical science. It involved not only the credibility of the witness, but an investigation of the questions whether she was right in supposing that what she used was a sea-tangle tent, whether her organs in their original formation and adjustment were like those of ordinary women, whether in form or relative position they had become changed by the experiences of her life so as to be abnormal, and whether what she did was to insert the tent in the os uteri, or to put it in another position in the belief that she had so inserted it. It was

necessary to try and decide all of these questions, and perhaps others, before her testimony could rightly have any weight. The Commonwealth had no opportunity to prepare for the trial of any of them.

A very extended examination of the authorities has failed to discover any case in which such evidence has been received in reference to a question in medical or surgical science. In a dispute about the action of a machine, or of some material substance under known conditions which produce effects at one time in exact repetition of those at another, the result of experiments has sometimes been received. But such experiments are quite unlike observations of the human body under medical or surgical treatment. But even if, among the multitude of cases, some could be found in which such evidence had been received, I should not think it very important, for it would not change the familiar fact that the rule above stated has prevailed from the earliest times in the courts of this Commonwealth, which are occupied almost daily in hearing the testimony of medical experts. The courts are rightly so reluctant to set aside a just verdict in an important case on account of a ruling admitting in evidence or excluding some trifle which, even if there was technical error, was obviously of no importance in producing the result, that decisions of this kind are sometimes made without a very careful analysis of the principles involved, or much consideration of the effect of the case as a precedent. But if, in the present case, Mary E. Hadley should have been permitted to give her experience in treating herself to disprove the theory of the medical experts, it seems to me that in every trial where a doctor offers to give his experience in a particular case, which, if he is correct in his account of it, proves or disproves a theory in medical or surgical science, he must be permitted to do it.

The defendant's wife was tried with him, and acquitted. At the next trial she can safely carry as heavy a burden of suspicion as he chooses to put upon her. To save him, she may even be willing to testify that she performed the operation without his knowledge. But if the result of this decision should be the escape of a guilty man, I shall deem it of little consequence as compared with the establishment of a precedent which, if followed, will, in my opinion, change materially the mode of proving and disproving general propositions in medicine and surgery.