PATRICK DONAHOE *vs.* NEW YORK AND NEW ENGLAND
RAILROAD COMPANY.

ANDREW BECKER *vs.* SAME.

Suffolk.    March 17, 1893. — May 18, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & LATHROP, JJ.

*Personal Injuries — Evidence.*

In an action against a railroad corporation for personal injuries occasioned to the
plaintiff by being struck, while engaged in discharging coal from a car into a
shed on the side of the track, by reason of the body of the car, which had been
tipped up so that a portion of its contents was discharged into the shed, sud-
denly turning and swinging back, it appeared that the body of the car was
hung on two iron rockers resting upon iron bars known as rocker beds, attached
to the truck frame at either end of the car; that the rockers were kept in posi-
tion on the beds by iron pins projecting therefrom and fitting into cavities in
the rockers; that the body of the car was kept in a horizontal position by two
iron hooks hanging down on either side from the bottom sill of the car and
catching on two iron latches which were made fast to the truck frame; and
that the hooks were so attached to the body of the car that they swung to and
fro, and attached to the hooks on the outside was a heavy piece of iron designed
to keep them down over the latch. The plaintiff contended that the reason
why the car swung back was because the hooks were bent, defective, and rusty,
so that they would not catch upon the truck frame. The defendant denied
that the hooks were in that condition, and offered evidence tending to show
that the hooks and car were in good order both before and after the accident,
and was allowed to introduce evidence that a block could be so used in tipping
the car that the hooks would not catch; that a man was there provided with
such a block; that he knew how to use it for that purpose; and that he was
in fact using it on other cars immediately before the accident; but there was
no evidence that a block was used on the car in question. *Held,* that the plain-
tiff had no ground of exception.

In an action against a railroad corporation for personal injuries occasioned to the
plaintiff, while engaged in dumping coal from a car, by reason of the body of
the car, which had been tipped up so that a portion of its contents was dis-
charged, suddenly flying back and striking him, he contended that the car was
in a defective condition, which the defendant denied, and called as a witness an
expert, who, after stating that a car might be in perfectly good order and still
fly back by reason of the fault of those who dumped it, was allowed to add
that he had seen it done. *Held,* that the plaintiff had no ground of exception.

TWO ACTIONS OF TORT, tried together, for personal injuries
occasioned to the plaintiffs respectively.

At the trial in the Superior Court, before *Sherman,* J., it
appeared that, on July 14, 1890, the plaintiffs were in the

employ of one Fisher, who was engaged in the coal business in Dedham; that the plaintiffs, at the time of the accident, were standing on a platform parallel with a track built on a wooden trestle, at an elevation of eleven feet from the ground, which ran through the middle of Fisher's coal shed, and from which coal could be dumped from cars into bins on either side; that a train of cars loaded with coal had been transported by the defendant corporation to Fisher's coal yard, and placed by the defendant on the trestle track; that the body of these cars was hung on two iron rockers, so called, which rested upon solid iron bars, known as the "rocker beds," attached to the truck frame of the car at either end of the car; that the rockers were kept in position on the rocker beds by several iron pins projecting from the beds and fitting into corresponding cavities in the rockers; that the body of the car was kept in a horizontal position by two iron hooks on either side, which hung down from the bottom sill of the car and caught upon two iron latches which were made fast to the truck frame; that the hooks were attached to the body of the car by an iron casting so that they swung to and fro, and on the outside of and attached to the hooks was a solid piece of iron of considerable weight, the purpose of which was to keep the hooks down over the latch; that while the plaintiffs, with others, were engaged in unloading one of these cars, the body of the car, which had been tipped up so that a portion of its contents was discharged into the shed, suddenly turned and swung back, striking the plaintiffs, who were thrown from the platform to the ground, and received the injuries complained of.

The jury returned a verdict for the defendant in each case; and the plaintiffs alleged exceptions to the admission of certain evidence, the nature of which sufficiently appears in the opinion.

*J. E. Cotter & R. M. Saltonstall*, for the plaintiffs.

*F. A. Farnham*, for the defendant.

ALLEN, J. The immediate question of fact to be determined was why the car flew back. The plaintiffs contended that the reason was because the hooks were bent, defective, and rusty, so that they would not catch upon the truck frame. The defendant denied that the hooks were in that condition, and offered evidence tending to show that the hooks and the car were in good order

both before and after the accident, and was allowed to introduce other evidence tending to show that the flying back of the car could be otherwise accounted for.   The first piece of evidence of this character was the testimony which tended to show that a block could be and was so used in tipping the car that the hooks would not catch.   If the evidence had gone so far as to show that a man was seen using the block at the time upon the very car which caused the injury to the plaintiffs, and that it had the effect to prevent the hooks from catching at that very moment, no one would doubt that the evidence would have been clearly relevant.   The evidence did not go so far as this, but it was circumstantial evidence tending to establish the same thing; that is to say, there was evidence that a block could be so used, that a man was there provided with such a block, that he knew how to use it for that purpose, and that he was in fact so using it on other cars immediately before the accident.   From these facts a legitimate argument might be urged that he was there for the purpose of so using the block, and that he in fact so used it upon the car which caused the accident.   If it were a criminal offence to use such a block in that way, and if that particular person were under indictment for so using it on this particular occasion, it seems clear that the evidence introduced by the defendant to show the good condition of the car and of the hooks before and after the accident, and to show the opportunity, means, and knowledge of that person, would be competent evidence tending to show his guilt.   In like manner, the evidence was competent in behalf of the defendant, as tending to meet and disprove the case of the plaintiffs, by showing that the accident was probably not due to a defect in the car.

The evidence of the defendant's expert was competent for similar reasons.   It tended to show that the accident could be accounted for otherwise than by reason of a defect in the car. When he stated that a car might be in perfectly good order, and still fly back by reason of the fault of those that dumped it, it was not erroneous to allow him to add that he had seen it done.   This served to show more clearly the value and weight of his opinion.   *Commonwealth* v. *Leach*, 156 Mass. 99, and cases there cited.

*Exceptions overruled.*