## JOHN LESLIE *vs.* GRANITE RAILROAD COMPANY.

Norfolk.    November 11, 1898. — January 9, 1899.

Present: FIELD, C. J., HOLMES, MORTON, & LATHROP, JJ.

*Personal Injuries — Master and Servant — Negligence — Evidence — Expert.*

At the trial of an action under the employers' liability act, St. 1887, c. 270, for personal injuries occasioned to the plaintiff, who was employed in a quarry, by the giving way of the guys of a derrick near which he was working, it appeared that the defendant's superintendent directed a chain to be placed around a large stone and fastened by a slip link at the back of the top edge of the stone in order to turn it, the end of the chain being attached to the boom of the derrick; and that, when the derrick was started, the stone moved and canted on its edge and then lurched over, bringing a strain on the derrick, and the guys then gave way. Several experts were called by the plaintiff and asked, against the defendant's objection, a hypothetical question as to the usual method of turning

such a stone, describing its size and situation as shown by the evidence, by such a derrick, describing it. The witnesses described a different method from that used, and testified in effect that the method pursued caused the result; and these were contradicted by experts for the defendant. *Held,* that the evidence objected to was competent; and that there was evidence of negligence in handling the stone which caused the guy to give way.

In an action for personal injuries occasioned to the plaintiff, while employed in a quarry, by the giving way of a guy of a derrick, the end of which was fastened to the derrick after passing through a ring by a patent clip made of cast iron, a witness, who was an expert in iron and steel, testified that there was a difference in the strength of cast iron and wrought iron. He was then asked, against the defendant's objection, which was the stronger of the two, and answered, "wrought iron." At this time there was no evidence in regard to these clips except that they were used to fasten the guys; but subsequently the defendant put in evidence that this clip was the best kind obtainable. *Held,* that the evidence objected to was competent at the time it was introduced.

The proper way of turning a large stone in a quarry so as not to bring an undue strain upon the derrick used in the work may not be matter of common knowledge, but a subject for expert testimony.

An expert witness called by the plaintiff in an action for personal injuries alleged to have been caused by the negligent manner of moving a stone in a quarry, who has testified, on cross-examination, without objection by the defendant, that the method adopted would be improper, may be allowed, on re-direct examination, to state the reason of his opinion.

TORT, for personal injuries sustained by the plaintiff on September 22, 1896, while in the employ of the defendant at its quarry in Quincy. The declaration contained several counts. The fourth count, on which alone the jury found for the plaintiff, was under the employers' liability act, the St. of 1887, c. 270, § 1, cls. 1, 2, and alleged, among other things, that the injuries were caused by the negligent manner of moving a stone in the quarry. Answer, a general denial. At the trial in the Superior Court, before *Bond,* J., the defendant alleged exceptions, which appear in the opinion.

*J. Lowell & J. A. Lowell,* for the defendant.

*J. E. Cotter,* (*J. W. McAnarney* with him,) for the plaintiff.

LATHROP, J. The exceptions in this case relate to the refusal of the judge, at the close of all the evidence, to instruct the jury to return a verdict for the defendant, and to the admission of certain evidence offered by the plaintiff. No requests for instructions were made, and no exception was taken to any part of the charge. There was evidence from which the jury would have been waranted in finding the following facts. The plaintiff had been set to work, with five other workmen, cutting a

large stone that was on the surface of the ground near the top of the defendant's quarry, and near a large derrick. At the same time other men were at work on another stone, eighteen feet long by eight feet high, and two and a half feet thick. This stone weighed about thirty tons. It stood on its edge, and it was necessary to turn it so as to work on its top. One Robertson, who was the defendant's superintendent and the foreman of its quarry, and who had charge of the men, called a number of quarrymen from the quarry to operate the derrick and turn the stone. He directed the men how to put a chain about the stone, and where to fasten it, which was back of the top edge of the stone, with a slip link. The end of the chain was then attached to the boom of the derrick. The derrick was started, the stone moved and canted on its edge, and then lurched over. This brought a strain on the derrick, and one guy gave way and then another. The plaintiff was struck by one of the guys and injured.

Several experts were called by the plaintiff, and were asked a hypothetical question as to the usual method of turning such a stone, describing its size and situation as shown by the evidence, by such a derrick, and describing the derrick. To this question the defendant objected. The witnesses described a different method from that used by Robertson, which would avoid the jerk. One of the witnesses testified, in effect, that the method pursued in this case caused the stone to lurch, and that when the lurch came it was impossible not to have the strain; and that either the guy would give way, or the chain would break. While the experts for the defendant contradicted the experts for the plaintiff, it is clear that there was evidence for the jury that there was negligence in the handling of the stone, which caused the guy to give way.

It appeared that the end of the guy which gave way was fastened to the guy, after passing through a ring, by a patent clip called the Crosby clip, made of cast iron. One witness for the plaintiff, who was an expert in iron and steel, testified that there was a difference in the strength of cast iron and wrought iron. The plaintiff's counsel then asked the witness which was the stronger of the two, wrought iron or cast iron. This question was excepted to. The witness answered, " Wrought

iron." At the time this question was allowed to be put there was no evidence in the case in regard to these clips, except that they were used to fasten the guys, as before stated. Robertson subsequently testified, for the defendant, " that the patent clips such as were used on the guys of this derrick, and one of which broke, were the best that could be bought, and that this was the first of these clips that he ever knew to break." One other witness testified for the defendant that " the Crosby clip was the best kind of clip obtainable." There was also evidence that the derrick was regularly inspected.

On this evidence, the defendant contends that, as it- bought the best clip known, the breaking of it was not evidence of negligence; and that the case came within the rule stated in *Reynolds* v. *Merchants' Woolen Co.* 168 Mass. 501. In this- case it is said : " Machinery used in textile manufacturing is ordinarily built and furnished by persons whose business it is- to make machinery, and who, if reputable makers, are more likely to turn out safe products than men whose chief skill and thought are developed in some other line of work. Mill owners usually procure their machines of reputable makers. Such conduct meets the standard of ordinary care, and it is not negligence on the part of an employer to place in his mill, and, after proper inspection, to use machinery so bought."

If we assume that the clip came within this rule, the defendant should have asked for instructions based upon the supposition that the jury believed the defendant's witnesses. But this does not affect the competency of the evidence at the time it was introduced. There was at that time nothing to show that such a clip was made only of cast iron, and indeed this fact appears only inferentially from the evidence for the defendant. The evidence tended to show that the clip could have been made of a stronger material than was used, and had a bearing upon the question of reasonable care.

The defendant further contends that the testimony of the experts should have been excluded, on the ground that it was a matter within the common knowledge of the jurymen. The question was as to the proper way of turning a stone so as not to bring an undue strain upon the derrick. It can hardly be said that this is a matter of common knowledge, when the de-

fendant's experts differed so widely from those of the plaintiff on this subject.

The only other objection relates to a question put to one Cook. This witness, who was called as an expert by the plaintiff, testified on cross-examination that it would be an improper way to chain the stone by putting the chain entirely around it. On redirect examination, the plaintiff's counsel asked the witness his reasons why he stated it would be improper to place the chain entirely around the stone in turning it. This question was objected to. The witness was allowed to answer, and the defendant excepted to the question.

We see no ground for this exception. An expert may state the grounds and reasons of his opinion. *Hawkins* v. *Fall River*, 119 Mass. 94. *Eidt* v. *Cutter*, 127 Mass. 522. *Commonwealth* v. *Leach*, 156 Mass. 99, 102.

The defendant, however, objects that the question should not have been allowed because it called for an opinion on the issue, which was for the jury to decide. But the witness had been allowed, on cross-examination, to make the answer he made, and we are of opinion that it was within the discretion of the judge to allow him to state the reasons for his opinion.

*Exceptions overruled.*