THEOPHILUS P. CHANDLER & others *vs.* JAMAICA POND
AQUEDUCT CORPORATION

Norfolk.    Jan. 26. — June 28, 1878.    Aug. 29. — Oct. 19, 1878.
LORD & SOULE, JJ., absent.

A statute gave an aqueduct corporation power to take land, and provided that the damages should be assessed according to the law applicable in case of land taken for public highways. A subsequent statute, giving the corporation power to take additional land, provided that, on a petition to a court for the assessment of damages for land. so taken, "the cause shall thereupon proceed like other civil causes in said court." *Held*, that, in the case of land taken under the latter statute, the same rules should govern, in the assessment of damages, as applied to an assessment under the former statute.

Possession of land for many years, under a claim of title in fee, is sufficient to maintain a petition for the assessment of damages sustained by reason of the taking of the land by a corporation under the authority conferred by statute ; and evidence that the petitioner had a base fee only in part of the land is inadmissible in reduction of his damages.

If, at the trial of a petition for damages for land taken by a corporation, under a statute, the judge excludes evidence offered by the respondent, that, by a reservation in a deed, it had an easement in the land taken, and admits evidence that the respondent had the same easement by prescription, and the jury deduct the value of the easement in assessing the damages, the respondent has no ground of exception to the exclusion of the evidence offered.

An easement on the surface of land, established by grant, is lost by a non-user for twenty years, united with an adverse use of the servient estate, inconsistent with the existence of the easement, under a claim of title in fee.

A grant of a right to open a parcel of land, where it may be found necessary for the purpose of laying pipes, and of liberty to keep such pipes therein forever, does not expressly or by implication grant a right to change the location of the pipes after they are once laid.

No exception lies to the refusal to give a ruling requested, which is not shown by the bill of exceptions to be pertinent to the issue.

On a petition for damages for land taken by a corporation under authority conferred by statute, interest on the amount awarded is to be assessed from the time of the taking.

Under a statute giving the right to take land, and providing for a jury to assess the damages sustained by any person whose land is taken or injured, damages are to be assessed for the injury resulting to the adjoining land of a petitioner, although the petition sets forth only the taking of a described parcel of land, and prays for a jury to assess the damages caused by such taking.

On a petition for the assessment of damages for the taking of land, the jury may properly consider, in estimating its value, the purposes for which it may be used.

On a petition for the assessment of damages for the taking of land, the question whether a witness is competent to testify as to the value of the land taken is largely within the discretion of the judge presiding at the trial; and if such a witness is a selectman or an assessor of one town, he may properly be allowed to testify to the value of land taken in another town, near the boundary line between the two towns.

On a petition for the assessment of damages for the taking of land, a witness may be asked, on the question whether he is qualified to testify to the value of the land taken, whether he has not frequently been called as a witness to the value of land in land-damage cases.

On a petition for the assessment of damages for the taking of land under a statute authorizing the erection of a dam on the land taken, a witness, acquainted with the value of lands in the vicinity, and who is a civil engineer, and has made examinations of dams and waterworks, may properly be allowed to testify to the extent to which the dam, if built to the height allowed by the statute, would injure the remaining land of the petitioner.

PETITION to the Superior Court, filed April 11, 1873, for a jury to assess damages sustained by the petitioners by reason of the taking, on April 28, 1870, by the respondent, under the St. of 1868, *c.* 182, of about 100,000 feet of land in West Roxbury.

After the former decision, reported 122 Mass. 305, the case was tried in the Superior Court, before *Bacon,* J., who allowed a bill of exceptions alleged by the respondent, the material parts of which appear in the opinion.

The case was argued in January, 1878, by *M. Williams, Jr.,* for the respondent, and *A. D. Chandler,* for the petitioners; and judgment was afterwards ordered overruling the exceptions. The respondent thereupon moved for a rehearing, and this motion was argued in August, 1878.

MORTON, J. The St. of 1868, *c.* 182, authorizes the respondent corporation, "for the purpose of better supplying fresh water, and for saving and restraining the water that may percolate from Jamaica Pond into what was formerly known as Spring Pond, in land now owned by said corporation, to take, hold or purchase any land near or adjoining said land, now owned by said corporation," and empowers the corporation to

"enlarge said pond, formerly called Spring Pond, and raise a dam on said land taken or purchased, to such height as may best serve to save and restrain the water now running to waste from said Spring Pond, the better to save and supply fresh water from said Spring Pond for aqueduct purposes."

Section 2 of the act provides that any person or corporation whose land is taken or injured by the Jamaica Pond Aqueduct Corporation under the act, may apply for a jury to assess the damages for such taking or injury, by petition to the Superior Court for Norfolk County, and that, after the petition is duly entered in court, "the cause shall thereupon proceed like other civil causes in said court." The pond called Spring Pond in the act is now known as Ward's Pond. The act of incorporation, to which this statute is additional, provides that the damages for land taken "may be estimated by the county commissioners of the county of Norfolk, saving to either party the right of trial by jury, according to the law which provides for the recovery of damages accruing by laying out public highways." St. 1857, c. 135, § 3. Though the St. of 1868 contains no express direction to that effect, it is clear, by reasonable implication, that the intention of the Legislature was that the same rules should govern as are applied in the assessment of damages in cases of laying out highways.

The bill of exceptions does not state fully the title proved by the petitioners, but enough appears to show that they were at the time of the taking, and had been for many years, in possession of all the land taken and injured, claiming to be the owners in fee. Among other deeds, a deed from "The Aqueduct Corporation" to John Ward, dated July 12, 1804, was put in evidence. The material parts of this deed are set forth in *Jamaica Pond Aqueduct* v. *Chandler*, 9 Allen, 159, 160, and its construction is there considered. For convenience in this discussion, we will designate it as the Ward deed. The respondent offered to show that this Ward deed covered a part of the petitioners' land which was taken and injured.

The respondent did not contend that it had the right to show any title in itself derived from the old aqueduct corporation, under the deed given when that corporation was disseised. It admits that it is concluded, upon this point, by the former adju-

dication. *Jamaica Pond Aqueduct* v. *Chandler*, 121 Mass. 1. But it contended that by the Ward deed, which was a part of the petitioners' claim of title, the petitioners took only a base fee, and that the respondent had the right to rely upon this fact in reduction of damages.

It is not necessary to decide whether the Ward deed conveyed a fee simple or a base fee. In *Jamaica Pond Aqueduct* v. *Chandler*, 9 Allen, 167, the court held that it passed more than a chattel interest. The counsel for the tenants in that case contended only that it passed a base fee, and the court so regarded it; but the question whether the habendum was not repugnant to the grant, so that it passed a fee simple, was not raised or considered. If we assume, for the purposes of this case, that it passed only a base fee, we are of opinion that the respondent could not avail itself of this fact in diminution of the petitioners' damages. A base or qualified fee is an estate which may continue in one and his heirs forever, but which has a qualification annexed to it, by virtue of which it may be determined when that qualification is at an end. Cruise Dig. tit. 1, § 68. The grantee under the Ward deed took at least a base fee determinable by the removal by the grantor of the pipes from his land. Until it is determined, he has a fee, with generally all the incidents of an estate in fee simple. Cruise Dig. tit. 1, § 71. The grantor has no subsisting title in the land, but only a possibility that it may revert to him by the happening of the event upon which it is determinable. He is not, within the meaning of the act under which these proceedings are instituted, a person or corporation whose land is taken by the respondent. His possibility of interest is too remote and contingent to be the subject of an estimate of damages by a jury.

The petitioners, having shown a possessory title, may maintain this petition. *Hawkins* v. *County Commissioners*, 2 Allen, 254. And we are of opinion that, as owners of the fee, they have the right to recover the value of the land, even if a part of it is held by them under the Ward deed, and they have only a base fee in it.

It follows from these considerations that the Superior Court rightly rejected the evidence to show that a part of the land taken and injured was included in the Ward deed, and properly

refused the respondent's third and fourth requests for instruc-
tions.

The next exception we will consider grew out of the claim of
the respondent that, by the deed of the old aqueduct corporation
to the city of Boston, dated in 1851, and by subsequent mesne
conveyances, it took the easements reserved to the grantor in the
Ward deed, and that the jury should consider the existence of
these easements in reduction of damages. The court in form
rejected this claim, assigning as one reason that the easements
appeared to be appurtenant to the mill site. We are not able
to see that the reason given by the court was correct, but this
was an immaterial error, because, upon a careful examination of
the whole case, it is apparent that it was not prejudicial to the
respondent. The first reservation is of " the right to any logs
or pipes in the same leased premises for the purpose of convey-
ing water from Jamaica Pond, or any of the streams, fountains
and springs issuing from or near the same, through all and every
part of the premises." This reservation would affect only the
line of pipes which was in the ground at the date of the deed, in
1804. It would not affect the line of iron pipes laid afterwards,
and which runs through the petitioners' land adjoining that
taken, and which they claim is injured by the taking. The bill
of exceptions does not show that the first named line of pipes
runs across the land taken. If it did not, this reservation did
not create any easement upon the land taken or the adjoining
land, which is the subject of inquiry in this case. But another
and satisfactory answer to the respondent's exception on this
point is, that the jury allowed it in diminution of damages for
the incumbrance of the pipes as they existed at the time of the
taking in 1870. The undisputed evidence in the case showed
that the respondent had maintained both lines of pipe, under a
claim of right, for more than twenty years. It was therefore
treated at the trial as having acquired a right by prescription to
maintain them, and the jury were instructed to " deduct from
the sum which they consider the fair value of the land, as unin-
cumbered, such sum as they think this incumbrance of the pipes
diminished the land in value." The respondent thus received
the benefit of this easement of the pipes, and it is quite imma-
terial whether it existed in it by prescription or by a reservation
in the Ward deed.

The only other reservation in the Ward deed which affects the premises in question is the right " of raising any dam above or on the westerly boundary of the leased premises, to raise, stay or conduct the water for the use aforesaid, and to dispose of, check, impede or use any water tending to or issuing through the same leased premises, at its pleasure." The respondent contended that it had a right, under this reservation, to raise a dam and flow the land of the petitioners included in the Ward deed. It is a sufficient answer to this claim to say, that the uncontroverted evidence in the case shows that this easement was extinguished. At the trial in 1862, before Mr. Justice Metcalf, whose report was by agreement admitted as evidence in this case, it was found as a fact that prior to 1851, for many years, the aqueduct corporation made no use of the land described in the Ward deed and made no claim to any right therein, except such use and claim as would enable it to preserve its aqueduct in repair through these lands, and that the corporation was disseised of this land in 1851. The respondent does not contend that it or its grantors have ever in fact made any use or asserted any right to this easement. Its claim is that it is not shown that it has voluntarily abandoned the easement. But since 1851, at least, the petitioners and their grantors have held this land under a claim of title adverse to the aqueduct corporation and its assigns. It is true, as argued by the respondent, that the mere non-user of an easement, even for more than twenty years, will not be conclusive evidence of an abandonment. But a non-user for twenty years, united with an adverse use of the servient estate, inconsistent with the existence of the easement, will extinguish it. *Barnes* v. *Lloyd*, 112 Mass. 224. *Owen* v. *Field*, 102 Mass. 90. *Jennison* v. *Walker*, 11 Gray, 423. The easement we are considering was the right to raise a dam and to check, impede and use the water running through the land, and thus to flow it. This is a surface easement, and we are of opinion that the uninterrupted adverse use and occupation by the petitioners, for more than twenty years, of the land in question, under a claim of a title in fee, extinguished the easement. Such use and occupation was adverse to and inconsistent with the use of the easement, and gave to the petitioners a title by prescription to the land free of the easement.

We are therefore of opinion that the respondent was not aggrieved by the refusal of the court to rule that the jury were to deduct anything from the value of the land on account of these easements.

The respondent contended that under the deed of Giles Alexander and others to Luther Eames, dated March 15, 1794, it had the right to open any part of the land described therein for the purpose of laying pipes through it in any place and in any number, and to change the location of the pipes at its pleasure, and requested the court so to rule. The court rightly refused this ruling. This deed grants to Eames " a right to open our several lands when it may be found necessary for the purpose of laying such pipes, and liberty to keep and support such pipes therein forever." It grants the right to lay a line of pipes in such place as may be found necessary, but it does not expressly or by implication grant a right to change the location of the pipes after they are once laid. The case cannot be distinguished from *Jennison* v. *Walker*, 11 Gray, 423. See also *Bannon* v. *Angier*, 2 Allen, 128 ; *Jones* v. *Percival*, 5 Pick. 485.

The respondent, in its fifth prayer for instructions, asked the court to rule that the petitioners had, in 1870, no right to change the location of the watercourse, nor to cover it over. The instruction given in reply seems to be a substantially correct proposition of law ; but the bill of exceptions does not show that the instruction requested was called for or pertinent, and therefore fails to show that the respondent was injured by the instruction given, if it was erroneous.

The respondent requested the court to rule that the petitioners were entitled to recover interest only from the date of the filing of the petition, and not from the date of the taking. This request was rightly refused. *Old Colony Railroad* v. *Miller*, *ante*, 1.

The respondent also requested the court to rule that, under the language of the petition, the petitioners were not entitled to damages for injury to their adjoining land. The petition describes the land taken, and prays for a jury to assess the damages caused by such taking. This request was also rightly refused, and the jury properly instructed that they might return damages for injury to the adjoining land of the petitioners. By

the statute, the jury are to assess the damages sustained by any person whose land is taken or injured.   As we have before said, they are to proceed according to the law regulating the assessment of damages for land taken for a public way, and must assess not only the value of the land taken, but any injury resulting to the adjoining land of the petitioners.

Several exceptions which were taken by the respondent to the admission of evidence upon the trial, remain to be considered. ·

1. Ernest W. Bowditch, called by the petitioners, testified that he was a civil engineer and landscape gardener by profession, and had had experience in his profession throughout the eastern part of the United States; that he was familiar with the land taken, and had specially examined it and the other land of the petitioners.   He was then asked, against the respondent's objection, what the land in question was suitable for, in his opinion as a landscape gardener.   The court admitted the evidence.   This testimony was properly admitted.   The jury were to determine what was the fair market value of the petitioners' land taken by the respondent.   In determining this, they ought to consider its capabilities and the purposes for which it may be used.   The testimony of Bowditch tended to show the character of the land and the purposes to which it was adapted, and was competent.

2. Three witnesses, called by the petitioners, were allowed to testify, against the respondent's objection, to the value of the land taken.   Two of them had been selectmen of Brookline for many years, and one of them had bought and sold land there. The other was an assessor of Brookline from 1871 to 1877, had lived in the town for twenty years, and had been on the land in question, and had specially examined it.   When witnesses are called to testify to the value of land, the question whether they are sufficiently acquainted with the value of land in the vicinity to qualify them to testify is largely a matter of discretion in the presiding justice.   If they have become acquainted with the value of land in the vicinity, because they have been public officers, such as county commissioners, or selectmen or assessors, or because they have known of sales of land by themselves or others, they are generally admitted to testify as to value, not strictly as experts, but because they possess more knowledge upon the subject than the jury or the public generally.   *Swan* v. *Middle-*

*sex*, 101 Mass. 173. In this case, we can see no error in admit ting the testimony of these witnesses, all of whom had been town officers of Brookline, and as such were acquainted with the value of land in the immediate vicinity of the land in question. The fact that this land was on the other side of the town line, in West Roxbury, would not disqualify them as witnesses.

3. The question put to the witness Kendrick, whether he had not frequently been called as a witness to the value of land in land-damage cases, was not incompetent. The court were inquiring whether he was qualified to give his opinion as to the value of the land in controversy. There was other testimony tending to show that he was so qualified. The fact that he had often been a witness in similar cases, was a circumstance tending to show what attention he had given to the subject of the value of land, and was admissible within the discretion of the presiding justice.

4. The only remaining exceptions are those alleged to the testimony of the witness Philbrick. The witness testified that he was a civil engineer, that he was familiar with the value of land in the vicinity, and that he had, within the last two years, professionally made several examinations of dams and waterworks ; and that, if a dam, high enough to enlarge Ward's Pond to the limit taken by the defendant corporation, were built by the respondent, it would injure the remaining land of the petitioners materially ; would make it less desirable for dwelling-houses, and would injure its sale. We are of opinion that this testimony was competent. By the act under which the petitioners' land was taken, the respondent had the right to build such a dam as is described in the testimony of the witness, and the jury ought to take into consideration the fact that, in order to carry out the purposes of the act, such a dam might be built. It is not within common knowledge and experience what would be the effect of such a dam upon lower land in its immediate vicinity, like that of the petitioners. But a civil engineer, who has studied the subject, might be able to tell whether the water would percolate or leak through the dam, so as to render the adjoining lower land moist and undesirable for dwelling-houses. It was a matter upon which the testimony of experts is admissible to aid the judgment of the jury, and the witness was shown to be

an expert. The respondent relies upon the case of *Boston &
Worcester Railroad* v. *Old Colony & Fall River Railroad*, 3 Al-
len, 142; but the cases are distinguishable. In that case, it was
held that a witness, Howe, was not qualified to give his opinion
as to the effect of the location of the defendant's railroad over
the land adjoining a wharf used for the wood and lumber busi-
ness, whose qualification as a witness consisted in having been
engaged in the lumber business for a number of years and hav-
ing been president of a railroad for several years. The court
put his exclusion upon the ground that, though he had been in
the lumber business and connected with railroads, yet it was not
shown that he had ever known of the use or occupation of a
wharf by a railroad running over it, and therefore that he had
no practical experience or peculiar means of knowledge on the
subject in regard to which his opinion was asked. If the only
evidence of the qualification of the witness Philbrick as an ex-
pert in this case had been that he was a civil engineer, the case
might be similar to that of the witness Howe. But Philbrick
testified that he had professionally made examinations of many
dams and waterworks. Such examinations might give him spe-
cial knowledge upon the subject, and his testimony justified the
Superior Court in permitting him to give his opinion as an
expert.

Upon the whole case, we are of opinion that the respondent
has shown no sufficient reason for disturbing the verdict of the
jury.                                        *Exceptions overruled.*