ARTHUR L. BRACKETT *vs.* COMMONWEALTH.

BUTCHERS SLAUGHTERING AND MELTING ASSOCIATION *vs.* SAME.

ARTHUR L. BRACKETT *vs.* SAME.

BUTCHERS SLAUGHTERING AND MELTING ASSOCIATION *vs.* SAME.

Suffolk.    November 30, 1915. — March 1, 1916.

Present: RUGG, C. J., LORING, DE COURCY, CROSBY, & CARROLL, JJ.

*Commissioners,* Appointed by court under statutory authority. *Damages,* For land taken or impaired under statutory authority. *Bridge. Jurisdiction. Supreme Judicial Court. Superior Court. Evidence,* Of value, Admissions and confessions.

Commissioners appointed by a court under statutory authority, in the absence of an express provision to the contrary, must report their doings to the court by which they were appointed.

An Act of Congress approved February 27, 1911, authorized the metropolitan park commission, when authorized to do so by the State of Massachusetts, to construct drawless bridges across the Charles River connecting River Street in Cambridge and Cambridge Street in the Brighton district, so called, of Boston, and provided, "That before the construction of said bridges or any of them is begun, the State of Massachusetts shall by legislative enactment provide for adequate compensation for the owner, owners, lessee or lessees of property abutting on said river above any of the said bridges, for damages if any caused to said property or leasehold interests therein by reason of interference with the access by water to said property, due to the construction of bridges without draws: Provided further, that said legislative enactment shall provide for the appointment of three commissioners to hear the parties in interest and assess the damages to said property; their decision as to the amount of damages and questions of fact to be final; said commissioners to be appointed by the Supreme Judicial Court of Massachusetts." St. 1911, c. 439, giving authority to the metropolitan park commission to rebuild any of the existing bridges over Charles River within the metropolitan park district whenever funds for the purpose should become available by gift under the provisions of that statute, complied with the requirements of the act of Congress above described, and provided that "Upon petition of any such owner or lessee entitled to such damages, filed in the Supreme Judicial Court within one year after any such bridge without a draw is opened for public travel, said court shall appoint three commissioners to hear the parties in interest, and to assess the damages to said property; and the decision of said commissioners as to the amount of said damages and as to questions of fact involved shall be final." On petitions brought under this statute, and on others brought in the Superior Court, it was *held:*

1. That the commissioners appointed under this statute were officers of the Supreme Judicial Court by whom they were appointed, and that that court had

the power and was charged with the duty of enforcing the report of such commissioners if it was according to the law and ought to be enforced.

2. That therefore the Superior Court had no jurisdiction over the petitions filed in that court, the remedy afforded by St. 1911, c. 439, being sufficient and exclusive.

3. That the provision, that "the decision of said commissioners as to the amount of said damages and as to questions of fact involved shall be final," raised the implication that in other respects their decision is not final and that questions of law raised in the report may be reviewed. Moreover it was apparent on the report upon the present petitions that the commissioners intended to proceed and decide according to law.

4. That, while this court would review the report, it would not set it aside nor send the case back for rehearing unless there appeared to be some probability that an appreciable change would be made in the report by a correction of the mistakes, if any there were, and unless substantial justice required that course.

5. That an owner and a lessee of the same real estate abutting on the Charles River should bring separate petitions under the statute for the assessment of damages; that the only damage which the owner of such leased property can recover is that sustained by the part of the whole property which is left after deducting from it the value of the lessee's interest, and that the duty of the commissioners is to find separately the damages suffered by each petitioner.

At a hearing before commissioners on a petition by a lessee of real estate bordering on a river for the assessment of damages under a statute giving damages to such a lessee for injury to his leasehold interest by the construction of a bridge without a draw across the river by reason of interference with the access by water to the real estate occupied by him, it is proper for the commissioners to exclude a question asked the petitioner on his cross-examination in regard to the profits of his business, such profits being too remote to have any necessary bearing upon the issue of the injury to his leasehold interest.

Since the enactment of St. 1903, c. 437, § 48, which provides that the return made by a domestic business corporation to the tax commissioner "shall be open only to the inspection of the tax commissioner, his clerks and assistants, and such other officers of the Commonwealth as may have occasion to inspect it for the purpose of assessing or of collecting taxes," such returns are not admissible in evidence at a hearing upon a petition by a domestic business corporation for the assessment of damages under a statute for injury to its real estate to show that the real estate before the alleged injury was worth less than alleged by the petitioner.

At such a hearing certificates of financial condition filed by the petitioning corporation under St. 1903, c. 437, § 45, cl. 6, which properly have been received in evidence as admissions by the petitioner that its real estate was worth less than was shown by the evidence of the petitioner at the hearing, are not conclusively binding upon the petitioner.

Still less are such certificates binding upon an individual petitioner, who has filed a separate petition as lessee of the real estate of the corporation for injury to his leasehold interest.

At such a hearing it is proper to exclude statements made to an assessor by one who was a director, a clerk and the auditor of the petitioning corporation and by another who was its vice president and general manager as to the value of the petitioner's real estate, where it does not appear that these officers were author-

ized by the corporation to speak for it on that subject or that such statements
were within the scope of their official duty.

At such a hearing the fact, that the petitioning corporation paid taxes upon the
same valuation of its real estate after the construction of the bridge that was
alleged to have injured its property that it paid before the bridge was con-
structed, is not an admission by the petitioner that there had been no change
in value, such valuation being that of the assessors and not of the petitioner.
Nor is the failure of the petitioner to claim an abatement such an admission.

RUGG, C. J.   The first two of these cases are petitions brought
for the assessment of damages alleged to have been sustained by
the petitioners as lessee and owner respectively of property abut-
ting on the Charles River above the Stadium or Anderson Bridge,
caused by the construction of that bridge, built in accordance
with St. 1911, c. 439.   Upon these petitions commissioners were
appointed by the Supreme Judicial Court for the county of Suffolk,
to hear the parties and to assess their damages, whose award
was returned into that court.   The Commonwealth filed numerous
exceptions to the report and moved to recommit the report for the
same reasons in substance set forth in its exceptions.   The peti-
tioners asked for a ruling that the court had no jurisdiction to
receive or to act respecting the report, and that it be stricken
from the files and returned to the commissioners.   The single
justice * denied these requests for rulings, overruled the excep-
tions, refused to recommit the report, ordered it confirmed and
then reported all questions of law involved for determination
by the full court.   The last two cases are petitions brought by the
same petitioners in the Superior Court against the Commonwealth
under R. L. c. 201, seeking collection of the amounts awarded by
the commissioners.   The Commonwealth demurred and answered
in abatement.   A judge of the Superior Court † overruled the de-
murrers and answers in abatement and then reported the cases.

1.   The first essential step open to a person damnified in his
estate by the construction of the bridge was to file a petition in
the Supreme Judicial Court.   That of itself is implication that
that court acquired and retained jurisdiction of the cause of ac-
tion described in the petition.   The next step in the procedure was
the appointment by that court of three commissioners.   The en-
tire authority of the commissioners came from that appointment.

---

* *Braley*, J.                    † *McLaughlin*, J.

They were thereby empowered and directed to perform the duties set out in the order of appointment, and to execute the functions described in the statute. In the absence of express provision to the contrary, they were officers of the court. By imperative inference, they were required to make report of their doings to the court by which they were appointed. They stand on the same footing in this regard as auditors, masters and referees. As was said by Chief Justice Gray, with affluent citation of authorities, in *Wyman* v. *Eastern Railroad*, 128 Mass. 346, 347: "It is settled, by repeated decisions, that commissioners appointed by this court and deriving all their powers from their judicial appointment must, by necessary implication, without any express statute direction, return their award to the court which appoints them, to be there examined, and, if no sufficient cause to the contrary is shown, confirmed and recorded." *Kingman, petitioner,* 153 Mass. 566, 579.

The consent of the United States was necessary for the construction of the bridge. That consent was given by act of Congress approved Feburary 27, 1911.* It there was enacted that,

---

* That act of Congress is as follows:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that the Metropolitan Park Commission, or any town or city, or any other public body authorized by the State of Massachusetts, all or any of them, be, and they hereby are, authorized to construct, at any time hereafter, drawless bridges across the Charles River in the State of Massachusetts connecting River Street in Cambridge and Cambridge Street in the Brighton district, so called, of Boston, and at any other points upon said river, at, near, or above said Cambridge and River Streets: Provided, That said bridges shall be at least twelve feet above the ordinary level of the water in the basin over the main ship channel, and the piers and other obstructions to the flow of the river shall be constructed in such form and in such places as the Secretary of War shall approve: Provided further, That before the construction of said bridges or any of them is begun, the State of Massachusetts shall by legislative enactment provide for adequate compensation for the owner, owners, lessee or lessees of property abutting on said river above any of the said bridges, for damages if any caused to said property or leasehold interests therein by reason of interference with the access by water to said property, due to the construction of bridges without draws: Provided further, That said legislative enactment shall provide for the appointment of three commissioners to hear the parties in interest and assess the damages to said property; their decision as to the amount of damages and questions of fact to be final; said commissioners to be appointed by the Supreme Ju-

·before the construction of the bridge could begin, the State of Massachusetts should, by legislative enactment, provide for adequate compensation for persons suffering injury like in kind to that claimed by the petitioners, and "Provided further, That said legislative enactment shall provide for the appointment of three commissioners to hear the parties in interest and assess the damages to said property: their decision as to the amount of damages and questions of fact to be final: said commissioners to be appointed by the Supreme Judicial Court of Massachusetts." The material parts of the act of Congress were embodied in St. 1911, c. 439, § 2.

This act of Congress does not constitute the commissioners federal officers. They do not derive their authority in any degree from the United States. The Congress having the power to withhold consent for the construction of the bridge, or to grant consent upon whatever terms seemed wise, imposed as conditions to the granting of its consent, that provision should be made for awarding damages to persons suffering damage like that claimed by the petitioners, and that such damages should be ascertained by commissioners appointed by the highest court of the Commonwealth. These conditions could be performed only by the General Court of Massachusetts acting within the scope of its legislative powers and providing for the exercise of judicial functions by a State tribunal. Doubtless the injuries sustained by the petitioners were of a kind for which at common law no action would lie and no constitutional right would have been infringed if no provision for compensation to them had been made. *Blackwell* v. *Old Colony Railroad,* 122 Mass. 1. *Dwyer* v. *New York, New Haven, & Hartford Railroad,* 209 Mass. 419. But the Commonwealth was not thereby precluded from awarding them damages. Statutory compensation is not imperatively confined to the boundaries of strict rights secured by the paramount law. *Earle* v. *Commonwealth,* 180 Mass. 579, 583.

---

dicial Court of Massachusetts. Except as inconsistent herewith, this Act shall be subject to the provisions of an Act entitled 'An Act to regulate the construction of bridges over navigable waters,' approved March twenty-third, nineteen hundred and six.

"Sec. 2. That the right to alter, amend, or repeal this Act is hereby expressly reserved."

Manifestly, compliance with the conditions imposed by the act of Congress did not establish a federal but a State commission, deriving its authority from the State court by which it was appointed and to which it must report. The act of Congress does not purport to provide affirmative action on the part of the United States. It simply allows the State to enact a comprehensive scheme of legislation for the construction of the bridge, including compensation for injury to property, which so far as it affects that part of the field over which Congress has power, must comply with certain conditions. But it is a State scheme throughout when made vital by act of the General Court of Massachusetts. The commissioners, when appointed under this special statute, were officers of the court by which they were appointed.

2. It would be most unusual, if not unprecedented in our legislative history, to clothe a court with the duty to appoint commissioners to determine damages, and deprive it of power to enforce its award. St. 1911, c. 439, § 3, makes ample provision for meeting the expenditures incurred under the act out of the resources of the Commonwealth. There is a necessary implication that the Supreme Judicial Court has the power and is charged with the duty of taking whatsoever steps may be appropriate to see that the report of the commissioners is enforced, provided it is according to the law and ought to be enforced.

3. It follows from what has been said that the Superior Court has no jurisdiction over the petitions filed in that court. Since St. 1911, c. 439, is sufficient and complete in itself as to remedy for damages, that affords the means provided by the Commonwealth for the enforcement of rights against itself. It cannot be impleaded in any other manner or in any other court. *McArthur Brothers Co.* v. *Commonwealth,* 197 Mass. 137, and cases there collected.

4. The court has power to examine the report of the commissioners and review it as to any errors of law apparent on its face. This power is ordinarily a part of judicial duty. In the absence of express statute or law to the contrary, it inheres in a court appointing its officers to make investigations. It is provided in § 2 of the instant statute that "the decision of said commissioners as to the amount of said damages and as to questions of fact involved shall be final." The fair implication from these

words is that in other respects their decision is not final, but is subject to usual court procedure, and that questions of law raised in the report may be reviewed. The statute did not constitute the commission a board of referees or arbitrators, to whom all issues between the parties, both of law and fact, were to be submitted irrevocably. It is quite distinguishable from that before the court in *Selectmen of Danvers* v. *Commonwealth,* 184 Mass. 502, 506. Since neither the statute, the rule of court, nor agreement of parties made the commissioners referees or arbitrators, the well settled principle that the award of arbitrators or referees will not be set aside for alleged errors of law, is not applicable. *Fairchild* v. *Adams,* 11 Cush. 549. *Electric Supply & Maintenance Co.* v. *Conway Electric Light & Power Co.* 186 Mass. 449. *Darrow* v. *Braman,* 201 Mass. 469. Moreover, it is apparent from the report that the commissioners intended to proceed and to decide according to law. It has been said that, under such circumstances, even an award of arbitrators or referees may be reviewed to correct errors of law. *Spoor* v. *Tyzzer,* 115 Mass. 40. *Davis* v. *Henry,* 121 Mass. 150. See *Gloucester Water Supply Co.* v. *Gloucester,* 185 Mass. 535. The controlling principle in the case at bar is stated in *Boston & Worcester Railroad* v. *Western Railroad,* 14 Gray, 253, at page 258, in these words: "They [the commissioners] are constituted a board for the performance of certain services under the statutes; but as they derive all their right and power to act in the premises at all from their judicial appointment, the court by which it is made will so far supervise and control their proceedings, as to see that, in discharge of the duties thus imposed upon them, they have acted within the scope, and have neither exceeded nor failed to exercise the full measure of authority with which they are invested. In considering their return, if it be found that they have thus acted, their doings and decisions will not be interfered with."

While, therefore, the court will review the report, it will not be set aside nor the case sent back for rehearing, unless there appears to be some probability that an appreciable change would be made in the report upon a correction of the mistakes, if any there are, and unless substantial justice requires that course. *Newburyport Water Co.* v. *Newburyport,* 168 Mass. 541, 552. *Pigeon's Case,* 216 Mass. 51, 55.

5. There was no error in the exclusion of the questions, put by the Commonwealth to the petitioner Brackett upon his cross-examination, touching the profits of his business. The question on trial was the injury to his leasehold estate. The profits of his business were too remote to have any necessary bearing upon that issue. *Bailey* v. *Boston & Providence Railroad,* 182 Mass. 537, 539. *Boom Co.* v. *Patterson,* 98 U. S. 403, 410. If incompetent evidence touching that point had been injected in the case by the petitioner, the proper course was to move to have it stricken out, not to meet it by further inquiry into an irrelevant subject.

6. The Attorney General offered the original tax returns of the petitioning corporation filed with the tax commissioner of the Commonwealth and taken from his custody for the purpose of evidence before the commission. These returns are required by law to be in detail. It may be presumed that they contained statements as to value material to the issues on trial. It is matter of common knowledge that formerly such returns often have been used in evidence, when values therein stated became material in actions, by the persons making them. But in St. 1903, by § 48 of c. 437, it was enacted for the first time that such return "shall be open only to the inspection of the tax commissioner, his clerks and assistants, and such other officers of the Commonwealth as may have occasion to inspect it for the purpose of assessing or of collecting taxes." This provision has been continued in St. 1909, c. 490, Part III, § 40, and St. 1914, c. 198, § 6. It indicates a legislative determination not only that it shall not be open to general observation, but that it shall not be used for any purpose other than that stated in the statute. Thus its evidential character is also affected. The statute manifests a purpose that such returns shall not be used as evidence in the ordinary case. *Bowman* v. *Montcalm Circuit Judge,* 129 Mich. 608, 610. The reason for treating tax returns as not open to use by usual methods has been recognized. *Boske* v. *Comingore,* 177 U. S. 459, 469. *In re Joseph Hargreaves, Ltd.* [1900] 1 Ch. D. 347. It is not here intimated that in a criminal proceeding involving the integrity of the return, it might not be produced in court. Therefore, there is nothing in-- consistent with this conclusion in *Commonwealth* v. *Ryan,* 157 Mass. 403.

7. Certificates of condition filed with the Secretary of the Commonwealth by the petitioning corporation under St. 1903, c. 437, § 45, cl. 6, were received in evidence. These contained statements as to value of its real estate, which tended to contradict the value as shown by evidence introduced by the corporation at the hearing. These certificates were competent evidence as admissions by the petitioner as to the value of its real estate. *Smith* v. *Paul Boyton Co.* 176 Mass. 217. There appears in the record to be no other ground on which such certificates could have been received in evidence. It must be assumed that they were given the weight to which under all the circumstances they were entitled. But they were not binding admissions in the sense that the real value could not be shown by other competent evidence. The request for ruling, to the effect that the certificates constituted an admission by the corporate petitioner, taken in conjunction with the request to rule that they were binding on the other petitioner, implies that these requests went beyond the plain proposition just stated. The requests appear to seek to have attached to the certificates a conclusiveness on the question of value which they did not possess. No reversible error is shown in this respect. It is not necessary now to determine the effect of such certificates where persons have acted upon the information disclosed in them. *Steel* v. *Webster,* 188 Mass. 478, 480.

8. Plainly these certificates were not admissions binding the other plaintiff, who had nothing to do with making them.

9. The testimony as to statements made by one who was a director, a clerk and the auditor of the corporate petitioner, and by another who was its vice president and managing director, to an assessor of the city of Boston, as to the value of that petitioner's real estate, rightly was excluded. It does not appear that these officers were authorized by the corporation to speak for it on that subject, or that such statements were within the scope of their official duty. *Wellington* v. *Boston & Maine Railroad,* 158 Mass. 185. *Gilmore* v. *Mittineague Paper Co.* 169 Mass. 471.

10. The payment of taxes upon the same valuation of its real estate, after as before the erection of the bridge, was not an admission that there had been no change in value. The valuation was not the act of the landowner, but of the assessors. For the same reason, the payment of taxes worked no estoppel as to valua-

tion. Nor was the failure to claim an abatement of consequence in this connection. *Raynes* v. *Bennett*, 114 Mass. 424.

11. The commissioners reported that the damage to Brackett, on account of "his leasehold interest," was $18,000, and "the loss on his fixtures to be $3,400, a total of $21,400." It appears from another part of the report that what here was referred to as fixtures was a "coal plant," consisting of a shed, automatic railways, steam shovel, and a wharf. While the phrase of the decision in this respect is not felicitous, it appears to mean that the commissioners undertook to divide the damages between the two elements of land and of structures upon the land. That which the commissioners termed fixtures were structures annexed to the land and hence real estate. They were to become the property of the lessor at the end of the lease. These so called fixtures were as much a part of the leasehold interest as was the land itself. The right to occupy for the term of the lease the land, wharf. and buildings, with their attached machinery and appliances, was the estate which constituted the leasehold interest of the petitioner Brackett. Although such a division may be necessary sometimes, *Cornell-Andrews Smelting Co.* v. *Boston & Providence Railroad*, 209 Mass. 298, 314, there seems to have been no occasion for it here. But the form of the report in this particular does not require reversal.

12. It is contended with great earnestness in behalf of the Commonwealth, that the form of the report shows that the commissioners found the entire damages to the estate of which the corporate plaintiff owned the fee, on the basis that it as owner was in possession of the entire estate without deduction on account of the leasehold interest of Brackett, and then found the damages to Brackett's leasehold interest as a separate matter, thus including that item twice. That contention is based on the form of the report, especially in the light of the defendant's nineteenth request for ruling, which the commissioners gave. The form of the report in this particular is as follows: "In petition No. 21110, Butchers Slaughtering and Melting Association, we find that the value of the property before the building of the bridge was $290,000, and after the building of the bridge the value was $237,000. We therefore find for the petitioner and assess damages in the sum of $53,000, together with interest from December 11,

1912 to July 29, 1915, the date of filing this report, amounting to $8,374.00 making a total of $61,374.00. In petition No. 21109, Arthur L. Brackett, we find the value of his leasehold interest to have been $30,000 above the rental, and it was damaged to the extent of $18,000, and we find the loss on his fixtures to be $3,400, a total of $21,400, with interest from December 11, 1912 to July 29, 1915, the date of filing this report, amounting to $3,381.20 making a total of $24,781.20." This, standing alone, while not expressed with great clearness, does not seem open to misconstruction. All that the corporate petitioner could recover under its petition was the damage it had sustained to its real estate. It did not own free from incumbrance the entire real estate, but its title was subject to the incumbrance of the leasehold interest of Brackett. The only damage which in law the corporation could recover or be entitled to was that sustained in that part of the whole estate which was left after deducting from it the value of Brackett's leasehold interest. When, therefore, the commissioners refer to the petition of the corporation by number as constituting the cause of action on which the finding of damages is made, the rational inference is that they meant only that portion of the entire parcel of real estate for which that petitioner was in law entitled to recover damages. But the commissioners granted the defendant's request No. 19, to wit: "The findings by the commission should contain these figures: (a) the value of the entire tract of land immediately prior to December 11, 1912; (b) the value of the entire tract of land immediately subsequent to December 11, 1912, (c) the value of the leasehold immediately prior to December 11, 1912; and (d) the value of the leasehold immediately subsequent to December 11, 1912." Although this introduces some confusion and has caused doubt, yet it does not quite seem to overcome the statement from the report which has been quoted. That request, strictly construed according to the interpretation contended for at the argument on behalf of the Commonwealth, in (a) and (b) did not relate to any issue upon which the commissioners were required to pass. Their duty, as has been said, was to find the damages sustained by each of the petitioners. Separate petitions rightly were brought, and the damages were to be separately assessed. Although granting that request, the commissioners did not in express terms find the value

of the leasehold immediately before December 11, 1912, and immediately subsequent to that date. Those amounts can be ascertained only after some figuring. The plain duty of the commissioners was to find separately the damages suffered by each petitioner. They had performed that duty by the report as framed. Under all the circumstances, the only reasonable interpretation is to hold that the meaning of the report was not intended to be nullified by granting the request No. 19; but that the commissioners supposed they had complied with the request by the report, by finding the damages which the plaintiff corporation had suffered in its own right, and the damages which Brackett has sustained in his right.

The petitions pending in the Superior Court are to be dismissed for want of jurisdiction. In the petitions pending in the Supreme Judicial Court, the rulings of the single justice were right and the order confirming the report is affirmed in each case.

*So ordered.*

*J. N. Clark*, for the petitioners.

*R. S. Hoar*, (*J. W. Corcoran*, Assistant Attorney General, with him,) for the Commonwealth.