### VINEYARD GROVE COMPANY *vs.* INHABITANTS OF OAK BLUFFS.

Bristol.   October 22, 1928. — November 28, 1928.

Present: CROSBY, PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Damages,* For land taken or damaged by statutory authority.   *Evidence,* Of value; Opinion: expert; Admissions; Competency.   *Witness,* Expert, Cross-examination.

The town of Oak Bluffs took by eminent domain for park purposes a strip of beach above high water mark which included over one thousand feet of a strip about one thousand nine hundred feet in length, all belonging to a Massachusetts corporation, the part not taken being occupied by nearly seven hundred bathhouses.   The taking was in August, 1926.   In the winter of 1926, the Commonwealth completed the construction, under a license given by the landowner, of a sea wall at the top of the beach.   One half of the cost of the sea wall was borne by the Commonwealth and one half by the town.   At the trial of a petition by the landowner for an assessment of its damages because of the land taken, including "damage to property affected by said taking but not included therein," it was *held,* that

(1) It was within the discretion of the trial judge to admit evidence of the cost of the building of the sea wall, and, it appearing that he charged the jury that the petitioner could not recover the cost of the wall apart from the value of the land, but only the value of the land as it might be increased in value by the presence of the wall, no abuse of discretion was shown;

(2) Evidence was admissible to show that the remaining land of the petitioner was damaged in that because of the taking the petitioner's business of constructing and renting bathhouses could not be expanded on the remaining land;

(3) Instructions in the charge with respect to damage to the petitioner's remaining land, in substance as follows, were full and accurate: that the petitioner could not recover damage to business as such, that the jury could take into account any purpose for which the remaining land could be used, "whether it could be used to the same advantage, and, if there is a disadvantage about it either in the way in which the land was left, the size, and all connected with it, if it is such that it has less value being cut up or separated from the rest of the parcel taken, it has less value than it had before in so far as the prospective purposes to which the land may be put or improved, it can be taken into account — only that far and no further. . . . If the petitioner satisfies you that it has suffered damage to the remaining land, in so far as it has so suffered damage it is entitled to recover";

(4) It was not error to admit in evidence testimony that in 1925 and 1926, when the petitioner's bathhouses were used to capacity, they at times were occupied by more than one person; nor in the admission of testimony that a decrease of business of the petitioner in 1926 was due to the action of the town;

(5) It was a proper exercise of discretion for the trial judge to permit a witness eighty-three years of age, who had lived at Martha's Vineyard Island for more than sixty years, had been a civil engineer and surveyor and was familiar with the land of the Island, had surveyed all the shore line property at Oak Bluffs and was familiar with the land taken, to testify that in his opinion the property was large enough to have a hotel erected upon it;

(6) It was a proper exercise of discretion to permit one to testify as an expert for the petitioners who had lived all his life in the town of Vineyard Haven, about two miles from Oak Bluffs, was a surveyor, civil engineer, and town clerk, had looked up titles, made deeds and mortgages, had purchased land all over the Island for himself and others, and was familiar with the land taken;

(7) It was a proper exercise of discretion by the trial judge to permit a qualified expert to be asked, "Has there been any growth or expansion in these block developments within the last two or three years, or four years?" and to permit the answer "Particularly in 1925, 1926, 1927, there has been a marked change in the minds of store folks in the large cities, in that they have wanted to carry their merchandise to places like Hyannis, Oak Bluffs, York Harbor, and similar places;"

(8) There was no error in permitting the petitioner to show the number of passengers of a steamboat company with a wharf adjoining the property taken who landed at Oak Bluffs in July and August in the year 1925, and during June, July, August and September, 1926;

(9) It was not error to admit in evidence a sale about nine months after the taking, at the price of $5,000, of a lot of land fronting on Vineyard Sound, about twenty-five hundred feet distant from the land taken, where there was evidence that the lot was vacant land, was on the roadway fronting the Sound, that the "top elevation of the land was about twenty-five feet above sea level with an embankment on the sound side," and that it was about ninety feet in depth;

(10) There was no error in admitting, in cross-examination of a director of the steamboat company, who in direct examination had testified for the respondent as an expert as to the value of the land taken, testimony that he was familiar in a general way with an offer made by the steamboat company for a part of the land, that the steamboat company intended to acquire a part of the land; and with respect to a refusal by the agent of the company to give the petitioner the figures of the number of passengers landed at the wharf;

(11) It was proper to exclude from a certificate of condition for 1926, filed by the petitioner with the Secretary of the Commonwealth, a statement "Real Estate Ass'd Value $57,000," representing all the real estate owned by the petitioner on April 1, 1926; it was not an admission that the real estate was of no more than that value;

(12) There was no error in the exclusion of so much of the lists

filed by the petitioner with the assessors for 1923 and 1924 as contained the total amount of real estate owned by it in Oak Bluffs, which was offered in evidence by the respondent "to show what real estate was included in the certificates of condition filed with the Secretary of the Commonwealth for those years."

PETITION, filed in the Superior Court on November 13, 1926, for the assessment of damages resulting from the taking described in the opinion. The statement of the claim in the petition was in the following language: "Said estate was of great value, and said action of said town and said park commissioners caused your petitioner great damage and loss, as regards the land taken and the building and structures thereon, including damage to property affected by said taking but not included therein."

In the Superior Court, the petition was tried in May, 1927, before *Dubuque*, J. The testimony, referred to in the opinion, respecting decrease of business in 1926 was as follows: The petitioner's president had stated in his testimony that the season generally began about June 15 and ended October 1. The following then occurred: "Q. (by PETITIONER'S COUNSEL) Could you give us an idea of the number of persons that used them during any given period of time? A. I can't give you — at times we were compelled to have people occupy them more than one person in a bathhouse, when we were running to capacity in the year of 1926. — RESPONDENT'S COUNSEL. I object to that also, and wish an exception. — Q. Did more than one person occupy a bathhouse? A. Yes, sir. . . . — RESPONDENT'S COUNSEL. My exception, please. . . . — Q. I wondered if you knew why the business during the season of 1926 was less than 1925? A. I do. — Q. Had that to do with some action of the town? A. It had. — Q. I don't ask what it was, — RESPONDENT'S COUNSEL. I object to that, if your honor pleases. — THE JUDGE. So far as there is the simple fact there was a decreased use in 1926, if that had something to do with the action of the town — was that with reference to the taking? — Q. Was it with reference to the taking? A. Yes, sir. — RESPONDENT'S COUNSEL. I object to that. — THE JUDGE. I think it may

be asked. — RESPONDENT'S COUNSEL. May I have an exception? THE JUDGE. Yes."

The exception relating to the testimony of James D. Henderson, referred to in the opinion, was as follows: He was called by the petitioner as an expert and testified "that he had been in the real estate business for twenty-five years; that he specialized, among other things, in summer property, and shore frontage properties; that although he had not developed any water frontage for commercial purposes, he had developed property in the centers of towns on Vineyard Sound for commercial purposes; for example, he had built twenty-six stores in the center of Falmouth and twenty-six stores in the center of Hyannis; that his development in Falmouth was about forty-five minutes by boat from Oak Bluffs; that he had visited the land taken at the request of counsel for the petitioners for the purpose of presenting to the court a plan for the use and improvement of that property; that he had informed himself as a real estate operator and dealer the prices paid for real estate at Oak Bluffs; that he had been consulted as to the proper price to receive for shore front property at Oak Bluffs; that in his opinion it would have been a reasonable and feasible use of the land taken at the time of the taking to build on it twenty-eight stores, a bowling alley and approximately two hundred bathhouses; that the land taken possessed the following advantages for a development of that character; that it was the pivotal point of the town of Oak Bluffs adjoining the steamboat wharf where people arrived and departed from the Island; that it was on the water opposite the park and adjoining bathing beaches, where people congregated; that it was advantageous from an advertising standpoint, being located so that a merchant who established himself there would be seen by people passing by, going to the boat, to the park to listen to band concerts or to the beach to bathe; and that it had a wide sidewalk in front of it." Subject to an exception by the respondent, he then was asked, "Has there been any growth or expansion in these block developments within the last two or

three years, or four years?" and answered, "Particularly in 1925, 1926, 1927 there has been a marked change in the minds of store folks in the large cities, in that they have wanted to carry their merchandising to places like Hyannis, Oak Bluffs, York Harbor, and similar places."

Other evidence is described in the opinion. The respondent asked for the following rulings:

"1. The petitioner is not entitled to recover damages for injury to its business.

"2. The petitioner is not entitled to recover damage for published statements about the proposed taking.

"3. The petitioner is not entitled to recover damages to remaining land because the taking prevented expansion of the business carried on upon the remaining land.

"4. There is no evidence of any damage to the petitioner's remaining land lying south of the land taken.

"5. There is no evidence of any damage to the petitioner's remaining land from the use by the public of the land taken.

"6. The statements of value of the land taken in the lists filed by it with the assessors can be considered by the jury as admissions by the petitioner relating to the value of the land taken.

"7. The statements of value contained in the certificates of condition filed by the petitioner with the Commonwealth of Massachusetts can be considered by the jury as admissions by the petitioner relative to the value.

"8. The petitioner is not entitled to recover as damage the cost of the sea wall or its value as a structure.

"9. The beach between high and low water mark belongs exclusively to those who owned it before the taking, subject to the public rights as specified in the statutes.

"10. The owners of the beach between high and low water mark have the right to prevent its use by the public for bathing.

"11. The town of Oak Bluffs cannot prevent the passage by the public from walks along the east side of the improved part of the park to the beach as far as high water mark."

In the charge, the judge dealt with these requests as

follows: "I will now turn to the various requests. I will take first the respondent's requests. The first, I gave that. The petitioner is not entitled to recover damage to its business. That is true. Two, [reads] that is true. Three, [reads] I modified that. [The modification is quoted in the opinion.] Four and five, not given. Six, that I have given. Seven, I have given in substance. Eight, [reads] I add to that, apart from the land, but it may be considered in estimating the value of the land, if it increased its value. Nine, I have given in substance. Ten, I have given in substance. Eleven, I have given in substance. The town of Oak Bluffs cannot prevent the passage of the public over walks along the sea side of the improved part of the park to the beach as far as high water mark."

The respondent saved an exception to the giving of its third request as changed and to the denial of its fourth and fifth requests.

There was a verdict for the petitioner in the sum of $77,250. The respondent alleged exceptions.

*G. M. Poland,* (*F. H. Davis* with him,) for the respondent.

*J. L. Hall,* (*C. F. Choate, 3d,* & *M. E. Foster* with him,) for the petitioner.

CARROLL, J. This is a petition for the assessment of damages for the taking on August 26, 1926, by the respondent for park purposes of a parcel of land owned by the petitioner. The only issue involved is the amount of damages.

The jury viewed the premises. The land taken was the northerly part of a larger parcel owned by the petitioner. This larger parcel, including the land taken, extended continuously along the shore from the Oak Bluffs steamboat wharf on the north about two thousand feet to the town wharf on the south, being bounded westerly by the highway known as Sea View Avenue and easterly by low water mark on Nantucket Sound. The land taken extended from the Oak Bluffs steamboat wharf on the north one thousand seventy-one feet along the shore, to the land of the petitioner, which was not taken, being bounded westerly by Sea View Avenue and easterly by high water mark on Nantucket Sound. The taking did not include the strip between high

and low water along the parcel taken. The maximum width of the land taken measured one hundred sixteen feet; the minimum width was fifty-six feet. Along the whole eastern part of the land taken a sandy beach extended suitable for bathing purposes. All along the west side of this beach a sea wall had been built to check the erosion of the shore and protect the road; this sea wall was completed in the winter of 1926. Of the land taken the northerly part was called the Mattar lot. The remainder consisted of a strip about six hundred seventy-five feet long varying in width from eighty-two to fifty-six feet. The adjoining land of the petitioner was used for public bathhouses. So much of the land taken as lay south of the Mattar lot was subject to a restriction that no building or structure could be erected thereon which would project above the top of the bluff. The land of the petitioner south of and adjoining the tract taken was between eight and nine hundred feet long, and contained six hundred eighty-eight bathhouses which it used for supplying bathing facilities to the public.

The sea wall is of concrete; it was built by the Commonwealth and extended throughout the entire length of the land taken. Timber jetties were also built by the Commonwealth, extending from the surface of the wall into the water. The petitioner had executed a writing giving a license to the Commonwealth to build the wall. One half the cost of the wall and jetties was paid by the Commonwealth and one half by the respondent town.

1. An engineer of the division of waterways for the Commonwealth was permitted to testify that the cost of building the wall on the land taken was $21,468, and of the jetties between high water mark and the wall was $1,946.50. The judge admitted in evidence the cost of the wall subject to the respondent's exception, the judge stating to the jury: "The ultimate question which you have to decide is what is the fair market value at the time of the taking in August, 1926. In determining that you have a right to take into account whether there was a sea wall which protected the property. . . . [The sea wall] is not a separate element of damage that you can add onto the general market value

[of the property] . . . you cannot say, 'The sea wall cost $3,000 and the property is worth $5,000 and therefore the petitioner is entitled to $8,000' . . . . That would be giving the sea wall a separate value as distinct from the real estate as a whole.   You must take the real estate as a whole, wall and all."   There was no error in admitting this evidence. The jury were told that the petitioner could not recover the cost of the wall apart from the value of the land, but only the value of the land as it might be increased in value by the presence of the wall.   The admission or exclusion of such evidence is a matter largely within the discretion of the trial judge, and there was no abuse of this discretion in admitting the evidence.   *Beals* v. *Brookline,* 245 Mass. 20, 27.   *James Millar Co.* v. *Commonwealth,* 251 Mass. 457, 464. In *Stone* v. *Commonwealth,* 181 Mass. 438, the land taken was bordered by a sea wall.   The defendant excepted to what this wall was worth by the running foot.   The court, speaking through Chief Justice Holmes, said at page 440: "If the presiding justice had thought the evidence uninstructive and had excluded it, as in *Patch* v. *Boston,* 146 Mass. 52, 56, we should have been slow to revise the exercise of his discretion, but so far as we can judge he was right in thinking that it might be of some assistance to the jury, as in *Pierce* v. *Boston,* 164 Mass.  92, 97."

2. The respondent's next exception relates to the admission of certain evidence that the remaining land of the petitioner was damaged by reason of the taking.   Without objection, the president of the petitioner testified that the remaining land was unfavorably affected by the taking of the adjoining land; that because of the taking the petitioner's business could not be expanded on the remaining land.   He was then asked to explain and said: "There is no way to expand that business now.   We are tied up at that end and we cannot construct any more bathhouses."   The respondent asked that this be struck out on the ground that "it is not an element of damage to the remaining land, as the witness has put it."   The respondent also asked that the jury be instructed that the petitioner could not recover damages to the remaining land because the taking prevented expan-

sion of business carried on upon the remaining land; that there was no evidence of damage to the remaining land. The petition alleges that damages were suffered by the taking, including "damage to property affected by said taking but not included therein." A landowner whose property is taken is entitled to recover for any decrease in the value of the remaining land due to the taking, and as evidence of this decrease in value he may show the uses to which the land might be profitably put before and after the taking. We see no error in the admission of this evidence. *Maynard* v. *Northampton*, 157 Mass. 218.

The instructions asked for by the respondent were not given as asked, but the jury were fully and accurately instructed on the question of damage to the remaining land. They were told that the petitioner could not recover damage to business as such, that they could take into account any purpose for which the remaining land could be used, "whether it could be used to the same advantage, and, if there is a disadvantage about it either in the way in which the land was left, the size, and all connected with it, if it is such that it has less value being cut up or separated from the rest of the parcel taken, it has less value than it had before in so far as the prospective purposes to which the land may be put or improved, it can be taken into account — only that far and no further." In addition to this, near the end of the charge the jury were instructed: "You may take a part of a lot of land, the front part, and then you may leave another part of the lot. If it is not so advantageous to use the lot afterwards as it was before, you have a right to recover the damage to the remaining land. . . . If the petitioner satisfies you that it has suffered damage to the remaining land, in so far as it has so suffered damage it is entitled to recover." There was no error in refusing to give the instructions asked for, and there was no error of law in the instructions given. *Drury* v. *Midland Railroad*, 127 Mass. 571, 583. *Maynard* v. *Northampton, supra.* The petitioner was not permitted to recover double damages. It recovered damages for the property taken, and damages for the land not taken because its value was impaired, and the jury were not allowed to

award damages for the loss of business. *Wellington* v. *Cambridge*, 220 Mass. 312, 318.

The petitioner's president testified that during the years 1925 and 1926 the bathhouses were used to capacity. Subject to exception he testified that the bathhouses were at times occupied by more than one person. We do not understand that the respondent excepted to the evidence that the business of the petitioner decreased during the year 1926. Assuming that the respondent excepted to the evidence that the decrease in business in that year was due to the action of the town, we do not think there was error in the ruling. There was evidence that on the northerly side "of the remaining land the petitioner could expand for seventy-five feet," and "could build about sixty bathhouses, in two rows, and could probably build another row if it didn't interfere with the beach." The petitioner could show the demand for bathhouses already on the remaining land, which could be extended to include bathhouses if built on the land taken; and could show that the use of the remaining land as a bathing establishment was a reasonable and profitable use; and for this purpose the evidence excepted to could be considered. *Drury* v. *Midland Railroad, supra,* page 582.

3. The respondent excepted to certain expert evidence offered by the petitioner. The witness Crowell was eighty-three years old and had lived at Martha's Vineyard Island for more than sixty years; he had been a civil engineer and surveyor and was familiar with the land of the Island; he had surveyed all the shore line property at Oak Bluffs and was familiar with the land taken. He was permitted to testify that in his opinion the property was large enough to have a hotel erected upon it. There was no reversible error in admitting this testimony. See *Chandler* v. *Jamaica Pond Aqueduct Corp.* 125 Mass. 544, 551. It has been frequently decided that the question whether an expert is qualified to give an opinion rests largely in the discretion of the presiding judge, whose decision will not be reversed unless clearly erroneous in law. *Johnson* v. *Lowell,* 240 Mass. 546, 549. There was no error in admitting the testimony of the witness Swift. He had lived all his life in the town of Vineyard

Haven, about two miles from Oak Bluffs; he was a surveyor, civil engineer, and town clerk; he had looked up titles, made deeds and mortgages, had purchased land all over the Island for himself and others, and he was familiar with the land taken. *Chandler* v. *Jamaica Pond Aqueduct Corp., supra. Muskeget Island Club* v. *Nantucket,* 185 Mass. 303, 305. Within the discretion of the judge the testimony of Henderson was admissible. *Maynard* v. *Northampton, supra. Sargent* v. *Merrimac,* 196 Mass. 171, 174.

4. There was no error in permitting the petitioner to show the number of passengers of the steamboat company who landed at Oak Bluffs in July and August in the year 1925, and during June, July, August and September, 1926. The location and condition of the land could be taken into consideration; its distance from the landing and the number of passengers arriving might have some bearing on the value of the land. *Burt* v. *Merchants' Ins. Co.* 115 Mass. 1, 15. *Williams* v. *Taunton,* 125 Mass. 34, 41.

5. The petitioner was allowed to show, subject to the respondent's exception, a sale of a lot of land on May 2, 1927, at the price of $5,000, fronting on Vineyard Sound, about twenty-five hundred feet distant from the land taken. There was some evidence of similarity of this lot with the land taken; it was on the roadway, fronted the sound; it was vacant land. The "top elevation of the land was about twenty-five feet above sea level with an embankment on the sound side," and it was about ninety feet in depth. In our opinion there was sufficient evidence of similarity of the lot sold with the parcel taken to make the evidence admissible. On this record we cannot say there was such a dissimilarity as to require the exclusion of the evidence. *Sawyer* v. *Boston,* 144 Mass. 470. *Johnson* v. *Lowell, supra.*

6. Objection was made to certain questions asked of the witness Norton, a director in the steamboat company, on cross-examination. In direct examination he testified that he had experience in buying and selling real estate in Oak Bluffs, that the fair market value of the land taken was $7,500. On cross-examination he testified that he was familiar in a general way with an offer made by the New

England Steamship Company for a part of the land. This was excepted to, and the respondent also excepted to the testimony of the witness on cross-examination that the steamship company intended to acquire a part of the land. This evidence was admissible on cross-examination to show there was a demand for the land and was admissible, under the circumstances shown, in the discretion of the trial judge. *Jennings* v. *Rooney,* 183 Mass. 577. The evidence of Norton, in so far as it related to the refusal of Wahl (the agent of the steamship company) to give the petitioner the figures of the number of passengers landed at the wharf tended to show the interest or bias of the witness. There was no error, in our opinion, in the ruling of the judge on this question. *Jennings* v. *Rooney, supra.*

7. A certificate filed with the secretary of the Commonwealth on February 21, 1927, by the petitioner, showing its condition in 1926, was signed and sworn to by the president of the petitioner. In this certificate it was stated: "Real Estate Ass'd Value $57,000," representing all the real estate owned by the petitioner on April 1, 1926. The court excluded this item "Real Estate Ass'd Value $57,000" and the respondent excepted. As we construe the record, the respondent introduced in evidence certificates of condition for the years 1922, 1923 and 1925, and the lists filed with the assessors of the town for 1923, 1924 and 1926, and the valuation in the assessor's records for 1925 and 1926. The respondent contends that there was error in excluding the item in the certificate of condition "Real Estate Ass'd Value $57,000." In *Brackett* v. *Commonwealth,* 223 Mass. 119, certificates of condition filed by the petitioner were admitted; it was said at page 127 that these certificates contained statements of the value of its real estate which tended to contradict the value shown by the corporation at the hearing: "These certificates were competent evidence as admissions by the petitioner as to the value of its real estate." In the case at bar the certificate showing the condition of the corporation in the year 1926 contained no statement of the value of the real estate owned by it, but merely the assessed value of the property. This was not in our opinion

an admission by the petitioner of the value of the land; it was no more than a statement of the value placed on it by the assessors. If the value were stated, the statement would be admissible under *Brackett* v. *Commonwealth, supra,* but as a mere assertion that the assessed value was $57,000, it was not an admission against the petitioner, and the item was excluded properly. Nor do we think this item in the statement of condition admissible to contradict the petitioner's president, who testified that the value of the land taken was $110,000. The declaration of the assessed value was not an admission of the value by him.

8. The respondent also offered so much of the lists filed by the petitioner with the assessors for 1923 and 1924 as contained the total amount of real estate owned by it in Oak Bluffs "to show what real estate was included in the certificates of condition filed with the Secretary of the Commonwealth for those years." This was excluded and the respondent excepted. There was no error here. The item in the excluded evidence relating to real estate was a general one showing a value of all real estate owned by the petitioner wherever situate. We do not think this evidence would have aided the jury, and the respondent was not prejudiced by its exclusion.

We have examined all the questions argued by the respondent and we find no error in the conduct of the trial.

*Exceptions overruled.*